**The W. BIRKENFELD TRUST,**
**a Washington Trust, et al.,**
**Plaintiffs,**

v.

**Barbara BAILEY; et al., Defendants.**

No. CY–92–3062–AAM.

United States District Court,
E.D. Washington.

May 27, 1993.

Michael Haglund, Haglund & Kirtley, Portland, OR, for plaintiffs.

Ted A. Roy, Roy & Pell, Yakima, WA, local counsel for plaintiffs.

Lawrence Watters, Columbia River Gorge Commission, White Salmon, WA, for defendants Columbia River Gorge Commissioners.

Jim Johnson, Senior Asst. Atty. Gen., Washington Office of the Atty. Gen., Olympia, WA, for State of Wash.

Eric S. Gould, Dept. of Justice, Washington, DC, for Federal defendants.

David Swartling, Mill Cogan Meyers Swartling, Seattle, WA, Stephanie Striffler, Martin Dolan, Trial Div., Salem, OR, for State of Or.

Gary K. Kahn, Reeves, Kahn & Eder, Portland, OR, for Proposed Intervenor Friends of the Columbia Gorge.

Robert Leick, Stevenson, WA, Daniel R. Ritter, Davis Wright Termaine, Seattle, WA, for Skamania County.

Gerald A. Mastosich, Goldendale, WA, P. Stephen DiJulio, Foster Pepper & Shefelman, Seattle, WA, for Klickitat County.

## ORDER GRANTING MOTION TO DISMISS

McDONALD, District Judge.

This civil action for declaratory and injunctive relief is brought by several landowners within the Columbia River Gorge to challenge the statutory and constitutional validity of the Final Management Plan for the Columbia River Gorge National Scenic Area. The Gorge Commissioners, the Friends of the Columbia River Gorge, and the federal defendants filed three separate motions to dismiss the action for lack of jurisdiction. A hearing on the matter was held on April 1, 1993, in Yakima, Washington. For the reasons stated below, the motions to dismiss are granted.

## BACKGROUND OF THE GORGE ACT

The Columbia River Gorge National Scenic Area Act, 16 U.S.C. §§ 544–544p, was enacted by Congress in November 1986 for the purposes of enhancing the scenic, cultural, recreational, and natural resources of the Columbia River Gorge and protecting and encouraging economic growth in the Gorge area. 16 U.S.C. § 544a. To accomplish these goals, the Act created the Columbia River Gorge National Scenic Area and established an elaborate mechanism for the regulation of land use and development within the Scenic Area. The Act envisions a partnership between the federal, state and local governments. The Scenic Area is divided into three basic land classifications: Special Management Areas (SMAs) which are administered by the United States Forest Service; General Management Areas (GMAs) which are administered by the Columbia River Gorge Commission; and exempt urban areas.

The Columbia River Gorge Commission (Commission) is a regional agency created pursuant to a bi-state compact between Oregon and Washington. The thirteen-member Commission is comprised of three Oregon residents appointed by the Governor of Oregon, three Washington residents appointed by the Governor of Washington, one resident from each of the six counties within the Scenic Area,[1] to be appointed by the governing body of each of the respective counties, and one ex officio, nonvoting member who is an employee of the Forest Service. The compensation of the Commission members is determined by state law and is paid from funds provided to the Commission by the states of Oregon and Washington. 16 U.S.C. § 544c.

Under the Act, the Forest Service is to conduct a resource inventory and recreation assessment for the special management areas and to develop land use designations for the SMAs based on those studies. 16 U.S.C. § 544f. The Commission is responsible for completing a resource inventory,[2] economic opportunity study[3] and recreation assessment[4] for the entire Scenic Area. The Commission's assessment must incorporate without change the studies completed by the Forest Service for the SMAs. The Commission must also develop land use designations for the use of non-federal lands within the Scenic Area, based on the results of its resource inventory. After all studies are completed and the land use designations are made, the Commission is required to adopt a final management plan for the Scenic Area which incorporates without change the Forest Service's land use designations for the SMAs.

Upon adoption of the final management plan, the Commission is to submit the plan to the Secretary of Agriculture for review. If the Secretary finds that the plan is consistent with the standards prescribed for the plan and the purposes of the Act, he shall concur to that effect. 16 U.S.C. § 544d. The plan

1. The counties include Hood River, Multnomah, and Wasco Counties, Oregon, and Clark, Klickitat, and Skamania Counties, Washington.

2. "The resource inventory shall ... document all existing land uses, natural features and limitations, scenic, natural, cultural, archaeological and recreation and economic resources and activities...." 16 U.S.C. § 544d(a)(1).

3. The purpose of the economic opportunity study is to identify opportunities to enhance the economies of communities in the scenic area in a manner consistent with the purposes of the Act. 16 U.S.C. § 544d(a)(2).

4. "The Commission shall complete an assessment of recreation resources and opportunities for enhancement of these resources. The recreation assessment shall—
 (A) designate the location and specify the construction of an interpretive center or other appropriate facility, to be located in the State of Oregon, and of a conference center or other appropriate facility, to be located in the State of Washington;
 (B) identify areas within the scenic area that are suitable for other public use facilities, including but not limited to educational and interpretive facilities, campsites, picnic areas, boat launch facilities and river access areas; and
 (C) subject to the treaty and other rights of Indian tribes, designate areas to provide increased access for recreation purposes to the Columbia River and its tributaries; and
 (D) incorporate without change the recreation assessment developed by the Secretary pursuant to section 544f of this title for the special management areas."
16 U.S.C. § 544d(a)(3).

is then forwarded to the six counties which must adopt land use ordinances consistent with the plan for non-federal lands in both GMAs and SMAs. The counties' proposed land use ordinances for GMAs are to be reviewed for consistency by the Commission. Land use ordinances for SMAs are to be initially reviewed by the Commission, but final concurrence is to be given by the Secretary of Agriculture. If any county, after 270 days of receiving the final management plan, fails to adopt a land use ordinance consistent with the plan's land use designations for GMAs or SMAs, the Commission must make and publish a land use ordinance for the use of non-federal lands in such county within the boundaries of the Scenic Area or SMA, excluding the urban areas. 16 U.S.C. §§ 544e(c), 544f(a)(1). The Act provides for public hearings and comment prior to the final adoption of the management plan and the final adoption of land use ordinances.

Land use ordinances for GMAs become effective upon approval of the Commission. Land use ordinances for SMAs become effective upon concurrence by the Secretary, or if no concurrence is obtained, upon adoption of the ordinance by a vote of two-thirds of the Commission. If the Secretary does not concur in any land use ordinance approved or adopted by the Commission, the appropriation of funds pursuant to § 544n is denied to the relevant county. § 544f(n).

### FACTS RELEVANT TO THE INSTANT ACTION

A Final Management Plan ("the Plan") was adopted by the Commission on October 15, 1991, and delivered to the Forest Service on November 18, 1991. Secretary of Agriculture Edward Madigan found the plan to be consistent with the standards and purposes of the Act, but was troubled by the lack of deference provided for private property rights. He expressed his concerns as follows:

> While it is clear that the Act, by its nature, abridges much of the freedom of action normally accorded property owners in the interest of protecting the Gorge, the management plan gives no indication that property rights will be given due weight in the many "gray area" decisions that will have to be made in the future. I do not believe that Congress intended that property owners be infringed upon except to the extent necessary to protect the scenic beauty of the Gorge.

Letter from Edward Madigan, Secretary of Agriculture, to Stafford Hansell, Chairperson, Columbia River Gorge Commission (February 13, 1992). Because of these concerns, the Secretary conditioned his concurrence upon "modification of the plan to reflect that the Commission will utilize its discretion to maximize the protection of property rights within its statutory mandate to protect and enhance the scenic beauty of the Gorge." *Id.* The plan was to be implemented after modification, without an additional consistency finding by the Secretary.

The Gorge Commission forwarded the Plan to the six counties on April 14, 1992. The delivery of the Plan to the counties triggered a 60–day period during which each county was to advise the Gorge Commission whether it would proceed to adopt a land use ordinance consistent with the Plan. The Commission has authority to intercede as the local zoning authority for any county which fails to respond within the 60–day period or which fails to adopt an ordinance consistent with the Act. §§ 544e, 544f.

Klickitat County advised the Commission that it would not adopt the Final Management Plan. Skamania and Wasco Counties served notice of intent to adopt the Plan, but expressed reservations about the taking implications of the open space designations. Hood River County served notice of intent to adopt the plan, except for the open space designations.

On May 15, 1992, the plaintiffs[5] commenced this action against the Commission,

---

5. The current plaintiffs are: The W. Birkenfeld Trust, a family trust that owns approximately 4,000 acres of timberland within the SMAs in Skamania County; SDS Lumber Company, a Washington corporation that operates a wood products manufacturing complex at Bingen, Washington; SDS Company, a Washington general partnership that owns timberlands within the Columbia River Gorge; Broughton Lumber Company, a Washington corporation that man-

the states of Oregon and Washington, the United States Forest Service, and the Secretary of Agriculture, challenging the statutory and constitutional validity of the open space designations in the Plan. Three amended complaints have been filed since the commencement of the action. The First Amended Complaint added two claims based on the same underlying facts. The Second Amended Complaint added Hood River, Klickitat, Wasco and Skamania Counties as defendants to the action.[6] The Third Amended Complaint dropped the Commission and the states of Oregon and Washington as defendants and substituted the thirteen individual members of the Commission. This third amendment followed the Ninth Circuit's ruling in *Broughton Lumber Company v. Columbia River Gorge Commission*, 975 F.2d 616 (9th Cir.1992), which held that the Gorge Act did not abrogate the states' Eleventh Amendment immunity and that the Commission's waiver of sovereign immunity in state courts did not act as a waiver of its Eleventh Amendment immunity in federal courts.

The Third Amended Complaint sets forth five claims for declaratory and other injunctive relief. The first and second claims are brought pursuant to 42 U.S.C. § 1983 and seek a declaratory judgment that the Commissioners violated the Fifth and Fourteenth Amendments by adopting a Final Management Plan that contains no mechanism under which landowners can seek compensation for the takings effected by the Plan. Specifically, plaintiffs claim that a bi-state compact agency like the Commission, which is without the powers of condemnation or taxation, acts unconstitutionally when it imposes open space or equivalently restrictive designations on private property.

The third claim seeks a declaration that the Forest Service violated the Gorge Act by drafting land use designations for the SMAs in a manner that imposed massive restrictions on the use of private land without providing any funding mechanism for these obvious takings. While the plaintiffs concede that the Gorge Act grants the Forest Service condemnation power as well as land exchange and purchase authority, it claims that the Forest Service has refused to exercise these options as contemplated by the Act. According to the plaintiffs, "the Forest Service is legally obligated to acquire all private lands that must be dedicated to public purposes, such as open space." Hence, the Forest Service's substitution of the open space designations for the compensation and acquisition mechanisms violates the Gorge Act and renders the SMA open space designations void.

The fourth claim, which is directed against the Commissioners, the Forest Service and the Secretary of Agriculture, seeks a declaration that open space designations on private property in the GMAs and SMAs violate the Gorge Act because they are not based on the land uses in existence when the Act was enacted in 1986. Plaintiffs contend that the Act expressly prohibits the designation of any lands used or suitable for the production of agricultural or forest products as open space. Since the open space designations of the Plan are inconsistent with this statutory mandate, plaintiffs ask the court to declare them void.

The plaintiffs' fifth claim seeks an injunction precluding the Gorge Commission and the counties from implementing the Final Management Plan until it is amended "to set out in detail the just compensation mechanism available to landowners, including the source of the funding and the precise parameters of the judicial remedy."

The jurisdiction of this court is invoked pursuant to the Gorge Act, 16 U.S.C. § 544m; the Civil Rights Act, 28 U.S.C.

---

ages timberland in the Gorge; James M. Ellett Construction Co., Inc., an Oregon corporation that operates a rock quarry in Wasco county and is engaged in the road construction and utility line clearing business; James, Loretta, and Leroy Ellett, individuals who own land within the GMAs suitable for residential development and agriculture; J. Arlie Bryant, Inc., the owner and operator of the George Quarry in Hood River

County; and Thomas and Susan Handy, individuals who own land suitable for agriculture and timber production within the SMAs of Klickitat County.

**6.** Although the counties are named as defendants, they are aligned with the plaintiffs on the pending motions to dismiss.

§ 1343; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; the Administrative Procedure Act, 5 U.S.C. §§ 701–706; and the general jurisdictional statute for claims arising under the Constitution or laws of the United States, 28 U.S.C. § 1331.

## MOTIONS TO DISMISS

The Commissioners, the federal defendants and the Friends of the Columbia River Gorge move to dismiss the complaint for lack of jurisdiction. The defendants' jurisdictional arguments can be grouped into five major categories: (1) Eleventh Amendment sovereign immunity; (2) alleged imperfections in notice requirements of the Gorge Act; (3) legislative immunity; (4) justiciability, including the related doctrines of case or controversy, ripeness, and standing; and (5) abstention.

## A. ELEVENTH AMENDMENT.

■ The Commissioners, relying on the National Scenic Act, the bi-state compact, and the Ninth Circuit decision in *Broughton Lumber*, 975 F.2d 616, contend that the Eleventh Amendment prohibits the plaintiffs from suing the Commission in the federal district courts because the states of Oregon and Washington are the real parties in interest. The Commissioners view the plaintiffs' substitution of the individual Commissioners for the Commission as a mere subterfuge to circumvent the jurisdictional bar imposed by the Eleventh Amendment. For this reason, they urge the court to reject the plaintiffs' suggested application of the *Ex parte Young* legal fiction to the claims asserted here.

While the court finds some inherent logic in the Commissioners' argument, it cannot ignore the teachings of *Ex parte Young* and extend the protection of the Eleventh Amendment to the Commissioners. To do so under the facts and posture of the present case would effectively eviscerate the *Ex parte Young* doctrine.

■ The Eleventh Amendment was adopted in response to the Supreme Court's decision in *Chisholm v. Georgia*, 2 Dall. 419 (1793), which held that a state could be sued in federal court by a citizen of another state or by a foreign country. The Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court has interpreted the amendment as barring suits against an unconsenting state by its own citizens as well as by citizens of another state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Edelman v. Jordan*, 415 U.S. 651, 663–64, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). The amendment also bars actions against individual state officials, even when the state is not named as a defendant, if the plaintiff seeks "to impose a liability which must be paid from public funds in the state treasury...." *Edelman*, 415 U.S. at 663, 94 S.Ct. at 1356.

Under *Ex parte Young*, however, suits seeking prospective injunctive relief against state officials who violate federal law may be brought in federal court without violating the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). An official's enforcement of an unconstitutional statute is deemed an illegal act, performed without the authority of the state. Because the officer cannot be acting for the benefit of the state in performing an illegal act, the state is not affected in its sovereign or governmental capacity by the federal court's order enjoining the officer's future actions. *Id.* at 159–60, 28 S.Ct. at 453–54. The officer is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Id.* at 160, 28 S.Ct. at 454.

The cases cited by the Commissioners in support of their position offer no basis for rejecting the applicability of the *Ex parte Young* doctrine to the present case. In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), plaintiffs brought a class action for injunctive and declaratory relief against state officials who administered a federal-state aid program for

the aged, blind and disabled, alleging that the defendants were violating federal law and depriving plaintiffs equal protection of the laws by processing applications pursuant to a state regulation that did not comply with federal time limits for processing and making grants under the program. The district court declared the state regulation invalid insofar as it was inconsistent with the federal regulations and granted a permanent injunction requiring compliance with the federal time limits for processing applications and awarding benefits. The district court also ordered the state officials to release and remit wrongfully withheld benefits to all eligible persons who had applied for aid between the date of the federal regulations and the date of the court's preliminary injunction.

The Seventh Circuit Court of Appeals affirmed the decision over the state officials' contention that the Eleventh Amendment and *Ex parte Young* permitted only prospective relief and barred the award of retroactive benefits. While the Supreme Court reversed that portion of the lower court's order which directed payment of a retroactive monetary award from the coffers of the state, it affirmed the prospective portion of the order which declared the state regulation invalid and required the Attorney General of Minnesota to conform his future conduct to the requirement of the Fourteenth Amendment. *Edelman*, 415 U.S. at 658–59, 94 S.Ct. at 1353–54.

Because the plaintiffs in this action seek only injunctive and declaratory relief, and the court can likely fashion an adequate remedy without imposing a retroactive award of monetary relief to be paid from state funds, the holding in *Edelman* does not lend support to defendants' jurisdictional argument. The same is true of *Ford Motor Company v. Department of Treasury of Indiana*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). In that case, the plaintiff sued Indiana's Department of Treasury and the individual members of the Department's board, seeking a refund of taxes paid to the state. As in *Edelman*, the Court held that the action could not be maintained in federal court because the recovery sought would necessarily

be satisfied by payment out of state treasury funds. *Id.* at 463–64, 65 S.Ct. at 350–51.

The Commissioners' reliance on *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), is also misplaced. In *Dugan*, claimants to water rights along the San Joaquin River in California brought an action against the United States, local officials of the United States Bureau of Reclamation, and a number of irrigation and utility districts to enjoin the storing and diverting of water at the Friant Dam, which is part of the Central Valley Reclamation Project. The Supreme Court held that the action against the local officials must be dismissed, as the action was in fact one against the United States. In so holding, the Court stated:

> The general rule is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasure or domain, or interfere with the public administration," ... or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act."

*Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (quoting *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947) and *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949)).

*Dugan* is distinguishable from the present case. The plaintiffs in *Dugan* sought to enjoin federal officials from performing acts which were fully authorized by Congress and paid for through its continuing appropriations. *Dugan*, 372 U.S. at 621, 83 S.Ct. at 1007. The project could not operate without such performance. To grant the requested relief would prevent the United States from fulfilling its contracts with the water and utility districts, require it to dispose of valuable irrigation water in contravention of the Congressional mandate, and deprive it of the full use and control of its reclamation facilities. *Id.* Thus, the judgment would not only interfere with the public administration but also expend itself on the public treasury. *Id.*

Moreover, the plaintiffs in *Dugan* did not allege that the officials were acting beyond their statutory powers or that the powers themselves or the manner in which they were exercised were constitutionally void. The officers' authority to seize the plaintiffs' prop-

erty was constitutionally permissible and had no limitation placed upon it by Congress.

In contrast, the plaintiffs in this action allege that the Commissioners are not acting in conformity with the Congressional mandate and that the manner in which they have exercised their powers is constitutionally suspect. Their claims present a classic scenario for invoking the legal fiction of *Ex parte Young*. Consequently, the defendants' motion to dismiss on this ground must fail.

## B. NOTICE REQUIREMENTS UNDER THE ACT.

█ Defendants, construing the plaintiffs' action as a citizens suit under § 544m(b)(2), contend that the plaintiffs failed to provide notice as required by the Act. Section 544m(b)(3) prohibits the commencement of a citizens suit under § 544m(b)(2) prior to sixty days after the plaintiff has given written notice of the alleged violation or failure to perform to the Secretary, the Commission and the relevant county.[7]

Plaintiffs respond that the notice requirements of § 544m(b)(3) are irrelevant because they are invoking jurisdiction under § 544m(b)(4) rather than § 544m(b)(2). Plaintiffs deny that this is a citizens suit and resent the defendants' attempt to pigeonhole their claims into the citizens suit provision of the act. Although they acknowledge their complaint expressly alleges that "[p]laintiffs or their representatives provided notice to the Gorge Commission and to the Forest Service of this action pursuant to subsection 2(B) of 16 U.S.C. § 544m(b) on November 8, 1991," they explain that compliance with the notice requirement of § 544m(b)(2)(B) was precautionary only and cannot serve to waive plaintiff's right to invoke jurisdiction under § 544m(b)(4).

The plaintiffs note that the 60–day notice requirement under § 544m(b)(2) and the 60–day deadline for filing claims under § 544m(b)(4) are mutually exclusive; therefore, the Act prevents any single action from meeting the notice requirements of both subsections.

Plaintiffs state that the relief they seek is inconsistent with the purpose of a citizens suit which is to permit enforcement of the legislation by environmentally-minded citizens as a supplement to the enforcement capabilities of the government, thereby vindicating the rights of the public at large. The purpose of § 544m(b)(4), on the other hand, is to allow landowners adversely affected by actions of the Forest Service to obtain relief expeditiously when the agency oversteps its authority, while permitting the planning process to move forward smoothly if the agency's action is both constitutional and proper under the Act. Thus, plaintiffs view § 544m(b)(4) as being tailor-made to provide the type of speedy relief they seek.

Plaintiffs claim to have satisfied the only two requirements for bringing a suit under § 544m(b)(4): they have petitioned the court within 60 days of the government entity's action and have limited their prayer for relief to the modification, termination, or setting aside of that action.

Alternatively, plaintiffs contend that if they did seek to bring their action under § 544m(b)(2), the notice given by SDS, Broughton Lumber, the Birkenfeld Trust and Ellett satisfied the 60–day notice requirement for all plaintiffs, because all plaintiffs make the same facial claim that the Forest Service exceeded its authority. Since the Forest Service was put on notice that the open space designations would be challenged, it had sufficient time to conduct an investigation and to work out a mutually acceptable way to proceed without resorting to the court.

Before ruling on whether the plaintiffs have satisfied the notice requirements of § 544m(b), the court must determine whether this action is brought under § 544m(b)(2) or § 544m(b)(4). Section 544m(b)(2) provides as follows:

> Any person or entity adversely affected may commence a civil action to compel

---

**7.** Section 544m(b)(3)(A) in relevant part reads as follows:

> No action may be commenced ... under paragraph (2)(A) of this subsection ... prior to sixty days after the plaintiff has given notice in

writing of the alleged violation to the Secretary, to the Commission, and to the county in which the violation is alleged to have occurred....

16 U.S.C. § 544m(b)(3)(A).

compliance with sections 544 to 544p of this title—

 (A) against the Secretary, the Commission or any county where there is alleged a violation of the provisions of sections 544 to 544p of this title, the management plan or any land use ordinance or interim guideline adopted or other action taken by the Secretary, the Commission, or any county pursuant to or Commission under sections 544 to 544p of this title; or

 (B) against the Secretary, the Commission, or any county where there is alleged a failure of the Secretary, the Commission or any county to perform any act or duty under sections 544 to 544p of this title which is not discretionary with the Secretary, the Commission or any county.

16 U.S.C. § 544m(b)(2). Section 544m(b)(4) of the Act provides:

Any person or entity adversely affected by—

 (A) any *final action or order* of a county, the Commission, or the Secretary *relating to the implementation* of sections 544 to 544p of this title;

 (B) any land use ordinance or interim guideline adopted pursuant to sections 544 to 544p of this title;

 (C) any appeal to the Commission pursuant to this section;

 (D) any civil penalty assessed by the Commission pursuant to paragraph (a)(3) of this subsection

may appeal such action or order by filing in any of the courts specified in paragraph (5) of this subsection, *within sixty days after the date of service of such order or within sixty days after such action is taken,* a written petition requesting such action, order, land use ordinance, interim guideline, or appeal taken to the Commission be modified, terminated, or set aside.

16 U.S.C. § 544m(b)(4). The courts specified in paragraph (5) are the United States Dis-

trict Courts located in the states of Oregon and Washington.

Plaintiffs' first, second and fifth claims challenge the constitutional validity of the Plan due to the alleged absence of a procedural mechanism under which landowners can seek just compensation for the takings effected by the Plan. The primary purpose of these claims is not to compel compliance with the Act, but to insure the availability of a remedy for landowners who are likely to be harmed by the implementation of the Plan. Thus, the first, second, and fifth claims fall under § 544m(b)(4)(A) and need not satisfy the notice requirements of § 544m(b)(3).

In contrast, plaintiffs' third and fourth claims seek to compel compliance with the provisions of the Act. Close scrutiny of these claims reveals allegations of misfeasance rather than nonfeasance. Plaintiffs do not allege that the Secretary or the Commission **failed to perform** any nondiscretionary act or duty under §§ 544 to 544p. In other words, they do not allege that the defendants failed to conduct the studies or make the land use designations mandated by 544d and 544f; nor do they allege that the defendants failed to draft and adopt a management plan. Instead, plaintiffs allege that in performing these duties the defendants acted inconsistently with the standards prescribed in the Act. Plaintiffs ask the court to modify or set aside the actions of the defendants, i.e., to set aside the Plan and to compel the defendants to conform their actions to the standards set forth in the Act.

The third and fourth claims fall squarely within the purview of 544m(b)(2)(A): "a civil action to compel compliance with sections 544 to 544p of this title ... against the Secretary, the Commission or any county where there is alleged a violation of the provisions of sections 544 to 544p...." [8] Consequently, the notice requirements for § 544m(b)(2)(A) must be satisfied.

■ Plaintiffs concede that written notice of the alleged violations was not given by each of the plaintiffs. Nevertheless, plaintiffs urge the court to overlook any technical

---

8. That the type of claims asserted by the plaintiffs is contemplated by § 544m(b)(2)(A) is buttressed by the language of § 544m(b)(3)(A)(iii) which states:

 No action may be commenced ... under paragraph (2)(A) of this subsection ... which challenges the consistency of the draft management plan with the purposes and standards of

deficiencies in the notice because the goal of the requirement has been met. Plaintiffs point out that "[t]he record in the 1991 case demonstrates that a number of the present plaintiffs and others repeatedly **voiced** their concerns about the 'open space/takings' issue throughout the planning process."

In *Hallstrom v. Tillamook County*, 844 F.2d 598 (9th Cir.1987), the Ninth Circuit held that a similar notice requirement in the Resource Conservation and Recovery Act (RCRA) is jurisdictional, not procedural, and that failure to comply with the notice requirement mandates the dismissal of the action. The Supreme Court affirmed the Ninth Circuit's decision in *Hallstrom*, but explicitly declined to rule on whether the requirement was jurisdictional or procedural. However, the Court held that the notice and 60–day delay requirement is a mandatory condition precedent to filing suit and that failure to meet that requirement necessitates a dismissal of the action. *Hallstrom v. Tillamook County*, 493 U.S. 20, 31, 110 S.Ct. 304, 311, 107 L.Ed.2d 237 (1989). The notice requirement may not be disregarded by a district court at its discretion. *Id.*

This court has had a previous opportunity to address the notice provisions of § 544m(b)(3). In *Klickitat County v. Columbia River Gorge Comm'n*, 770 F.Supp. 1419, 1423–24 (E.D.Wa.1991), notice was given to the Forest Service by some but not all of the plaintiffs and no notice was given to the Commission. Both the Forest Service and the Commission moved to dismiss the action for noncompliance with the 60–day notice requirement of § 544m(b)(3). This court, recognizing the strict construction given to notice requirements by the Ninth Circuit, found that written comments and oral testimony before the Commission did not constitute "pre-suit notice" as contemplated by the Act. *Id.* at 1424. The notice given by two of the plaintiffs did not satisfy the notice requirements for the other plaintiffs, even though the notice stated that it was given on behalf of the two named plaintiffs "as well as

any other similarly situated persons, corporation or public body." *Id.* However, the court refused to dismiss the action for non-compliance with the 60–day notice requirement because the purpose of the rule had been served, i.e., the offending agency was given sufficient time to investigate the situation and an opportunity to work out a mutually acceptable way to proceed without resorting to court. 770 F.Supp. at 1424.

The same can be said here. While written notice of the alleged violations may not have been served on the Forest Service, the Commission and the relevant counties by each of the plaintiffs, the record is replete with evidence of a multitude of objections and statements made by landowners and other interested parties concerning the open space designations. To dismiss the claims on the basis of insufficient notice would elevate form above substance to a degree not contemplated by the Act. This the court will not do.

### C. *LEGISLATIVE IMMUNITY*

■ In order to preserve legislative independence, legislators acting in a legislative capacity are endowed with absolute immunity "not only from the consequences of litigation's results but also from the burden of defending themselves." *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 732, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980); *Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391, 406, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979). Immunity from civil liability encourages legislators to act independently in the interest of the public good without fear of outside interference from those who may be adversely affected by the legislation.

In *Lake Country Estates*, property owners brought suit in the federal district court alleging that the members and executive officer of a regional agency created by a bi-state compact between California and Nevada had adopted a land use ordinance that destroyed the value of petitioners' property in violation

sections 544 to 544p of this title or with other applicable law prior to the certification or adoption of the Management Plan pursuant to section 544d of this title. . . .

16 U.S.C. § 544m(b)(3)(A)(iii). This section makes it clear that Congress intended to allow

citizen suits for the purpose of challenging a plan's consistency with the Act or other applicable laws, but to restrict the timing of such suits to a date subsequent to the adoption of the final management plan pursuant to 544d.

of the Fifth and Fourteenth Amendments.[9] Because the members of the agency were acting under color of state law, the action was predicated on 42 U.S.C. § 1983 and jurisdiction was invoked pursuant to 28 U.S.C. § 1343. The complaint sought monetary and equitable relief. The Supreme Court found that the plaintiffs properly stated a cause of action under § 1983, but held that the individual members of the Commission were entitled to absolute legislative immunity. The Court refused to limit the immunity to federal and state legislators, finding the reasoning behind the privilege applied equally to federal, state and regional legislators. 440 U.S. at 405, 99 S.Ct. at 1179.

■ Plaintiffs attempt to distinguish *Lake Country Estates* from the case at bar by noting that the Tahoe Regional Planning Agency was not deemed to be an arm of the state for Eleventh Amendment purposes and, unlike the Gorge Commission, was subject to suit in federal court. Plaintiffs claim that to bar suit against the Gorge Commissioners would put plaintiffs in the unbelievable position of suffering a violation of federal rights while being shut out of federal court. Any attempt to confer legislative immunity on the Commissioners would be, in plaintiffs' view, inconsistent with *Tahoe–Sierra Preservation Council v. Tahoe Regional Planning Agency*, 911 F.2d 1331 (9th Cir.1990), wherein the Ninth Circuit held that the Tahoe Regional Planning Agency was not immune from liability for inverse condemnation.

The plaintiffs' argument is without merit. The individual members of the regional agency were not named as defendants in *Tahoe–Sierra Preservation Council* and therefore, the Court did not address any questions concerning their legislative immunity. The Court merely held that any government entity that regulates away all economically viable use of private property and thereby effects a taking, must pay just compensation to the owner, whether or not the entity possesses the power of eminent domain. 911 F.2d at 1341. The Court did not suggest that the government entity would necessarily be subject to suit in federal court. Nor did the

Court suggest that the individual members of the agency would be stripped of their legislative immunity.

In *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), the Court held that Congress did not intend § 1983 to abrogate the common-law immunity of legislators, whether the action is one for damages or for declaratory or injunctive relief.

> In holding that § 1983 "does not create civil liability" for acts unknown "in a field where legislators traditionally have power to act," [*Tenney v. Brandhove*, 341 U.S. 367, 379, 71 S.Ct. 783, 789, 95 L.Ed. 1019 (1951)], we did not distinguish between actions for damages and those for prospective relief. Indeed, we have recognized elsewhere that "a private civil action, whether for an injunction or damages, creates a distraction and forces [legislators] to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Eastland v. United States Servicemen's Fund*, [421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975)].

446 U.S. at 733, 100 S.Ct. at 1975.

Here, the complaint essentially attacks the actions of the Gorge Commissioners in their enactment of a Management Plan. As the conduct clearly falls within the sphere of legitimate legislative activity, the Commissioners are entitled to absolute legislative immunity and the claims against them must be dismissed. To the extent that any claims can be construed as alleging conduct beyond the legislative phase, the claims are unripe for adjudication. Accordingly,

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss on the basis of legislative immunity is **GRANTED**. The claims against the twelve Commissioners and Arthur Carroll, the ex officio member of the Commission, are **DISMISSED**.

## D. JUSTICIABILITY

As an alternative ground for dismissing the action, the defendants assert that the

---

9. California and Nevada entered into a compact to create a single agency to coordinate and regulate development in the Lake Tahoe Basin resort area and to conserve its natural resources. The compact, which was consented to by Congress, authorized the agency to adopt and enforce a regional plan for land use, transportation, conservation, recreation, and public services.

action is not justiciable. According to defendants, there is no case or controversy between adverse litigants, the plaintiffs lack standing to bring the action, and the matter is not ripe for adjudication. Specifically, the defendants contend that the plaintiffs cannot be adversely affected by any final action or order of the Commission, the Secretary or a county because no land use ordinances have been adopted by the counties and approved by the Commission and the Secretary. Until ordinances are adopted and implemented and the plaintiffs receive the Commission's final, definitive position regarding how it will apply zoning requirements, no actual dispute can exist and any judgment rendered by the court will constitute nothing more than an advisory opinion.

Plaintiffs rebut this contention, arguing that the adoption of the Final Management Plan should be considered a final action under § 544m(b)(4), since the terms of the Gorge Act leave no room for variation between the land use scheme commanded by the Final Management Plan and the implementing ordinances that must be adopted by the counties. Hence, it is a foregone conclusion that ordinances strictly adhering to the Commission's restrictive zoning plan will be adopted and approved in the immediate future.

 Article III of the Constitution limits the judicial power of the United States to actual cases or controversies. *Lujan v. Defenders of Wildlife,* —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Because of this limitation, the power of the federal courts to pass upon the constitutionality of legislative or executive acts "arises only when the interest of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough." *Golden v. Zwickler,* 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969). The closely related doctrines of standing and ripeness arise out of the Article III case or controversy requirement and are intended to "prevent courts from becoming enmeshed in abstract questions which have not concretely affected the parties." *Pacific Legal Foundation v. State Energy Resources,* 659 F.2d 903, 915 (9th Cir.1981). The party invoking the court's authority has the burden of demonstrating that he or she has standing to bring the action and that the matter is ripe for adjudication.

1. *Standing.*

 To satisfy the constitutional element of the standing requirement, the plaintiffs must show (1) that they personally have suffered an "injury in fact"—i.e., an invasion of a legally-protected interest which is concrete, particularized, and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendants' conduct; and (3) that the injury is likely to be redressed by a favorable decision. *Lujan,* —— U.S. at ——, 112 S.Ct. at 2136; *Valley Forge Christian College,* 454 U.S. at 472, 102 S.Ct. at 758. Prudential limitations prevent the plaintiffs from asserting generalized grievances or the rights of third parties. *Valley Forge Christian College,* 454 U.S. at 474–75, 102 S.Ct. at 759–60.

> We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Lujan,* —— U.S. at ——, 112 S.Ct. at 2142.

The defendants concede that the land use ordinances, which will be adopted by or for the counties, must be consistent with the Plan and include the Plan's open space designations for the SMAs. These ordinances will likely go into effect in the next couple of months. Since the plaintiffs own land within the designated open space areas and their intended uses of the property will likely be inconsistent with the applicable ordinances, the threat of injury is real and imminent. The potential injury could possibly be avoided or minimized by a decision declaring the open space designations invalid and unconstitutional. Thus, it would appear that the

plaintiffs have satisfied the Constitutional element of the standing requirement, at least with respect to their claims seeking to compel compliance with the Act.

The court need not determine whether the plaintiffs' claims can constitute anything more than a generalized grievance prior to the adoption and application of an ordinance to a specific parcel of land, because even if the court were to find that the plaintiffs have standing to bring the action, subject matter jurisdiction would fail on ripeness grounds.

### 2. *Ripeness.*

 While the doctrines of standing and ripeness are closely related, ripeness requires an additional inquiry into the appropriateness of judicial intervention. *Pacific Legal Foundation,* 659 F.2d at 915.

In deciding whether an issue is ripe for review, we "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." A challenge to a statute or regulation that has not yet been applied is generally considered fit for judicial determination if the issue raised is a "purely legal one," or one which "further factual development will not render more concrete." On the other hand, if the issue would be illuminated by the development of a better factual record, the challenged statute or regulation is generally not considered fit for adjudication until it has actually been applied.

*Id.* at 915 (citations omitted). Unless a claim is ripe for adjudication, the court lacks subject matter jurisdiction under the case or controversy clause of Article III and the claim must be dismissed. *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989).

 With respect to zoning regulations, a planning commission's land use decisions are not ripe until they represent a final, definitive position regarding how the commission will apply the regulations at issue to the particular land in question. *MacDonald, Sommer & Frates v. County of Yolo,* 477 U.S. 340, 351, 106 S.Ct. 2561, 2567, 91 L.Ed.2d 285 (1986); *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 191, 105 S.Ct. 3108, 3119, 87 L.Ed.2d 126 (1985); *St. Clair,* 880 F.2d 199

at 202. To satisfy the finality requirement the plaintiff must demonstrate that the planning commission rejected his or her proposal for development and denied a variance from the regulations, or that at least one meaningful application was denied and further steps for approval would be futile. *St. Clair,* 880 F.2d at 203; *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 911 F.2d 1331, 1336 (9th Cir.1990); *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1454 (9th Cir.1987). "[A] case or controversy is not presented simply because a party is subject to a general regulatory process which, when applied to the specific facts developed in some future administrative proceeding, *might* cause a state agency to take a particular action which some court *might* thereafter determine to be unconstitutional." *Sea Ranch Ass'n v. California Coastal Zone Conservation Commissions, et al.,* 537 F.2d 1058, 1063 (9th Cir.1976).

In *Williamson Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), a land developer filed suit against the County Planning Commission, alleging that the Commission had taken its property without just compensation by refusing to approve a proposed development. The zoning ordinance in effect at the time the developer acquired the tract of land permitted cluster development of residential areas. The Commission subsequently changed the zoning ordinance to reduce the allowable density of dwelling units on a tract of land, but continued to apply the old ordinance to the developer's tract. Two years later, the Commission decided that further development of the developer's tract would be governed by the new ordinance.

A jury found that the developer had been denied the economically viable use of the land and awarded damages. The district court granted the Commission's motion for judgment notwithstanding the verdict on the taking claim, but entered an injunction against the Commission, requiring it to apply the old ordinance to the tract. The Court of Appeals reversed, holding that the application of a government regulation can constitute a taking if the owner is denied all economically feasible use of the property. The Supreme Court granted certiorari and held

that the jury verdict could not be upheld because the action was premature. The Court concluded that a claim asserting that the application of government regulations effects a taking of property cannot not be ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue. *Williamson*, 473 U.S. at 186, 105 S.Ct. at 3116. The landowner must avail himself of any procedures for acquiring a variance or an amendment to the regulation and receive a definitive denial of that request before the matter will be ripe for review. *Id.* at 190–91, 105 S.Ct. at 3118–19; *Tahoe–Sierra Preservation Council*, 911 F.2d at 1336–38. "Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.*, 473 U.S. at 195, 105 S.Ct. at 3121.

■ Plaintiffs have failed to meet any of the requirements for ripeness. No ordinances have been adopted by any county or by the Gorge Commission, with approval by the Secretary. Plaintiffs have not sought, much less obtained, a final, definitive decision rejecting a proposed land use or a variance. Nor have plaintiffs sought and been denied any compensation through administrative procedures.

Since the Fifth Amendment does not proscribe the taking of private property, but merely proscribes the taking of property without just compensation, it logically follows that the plaintiffs' action, in so far as it seeks a declaration that the open space designations in the Commission's Final Management Plan constitute an unconstitutional taking, is premature prior to the application of the restrictions to a given parcel of land and the exhaustion of the administrative remedies provided by the Act. Until such remedies are exhausted, the parties will not have received a final determination by the Commission as to how they will be allowed to develop their properties.

Even assuming the land use ordinances containing the Commission's restrictive zoning plan are adopted, the Act allows the counties to adopt amendments, revisions or variances to the ordinances. 16 U.S.C. § 544e(b)(2). The Gorge Commission may also choose to amend the plan or grant a revision or variance. 16 U.S.C. §§ 544d(h), 544e(b)(2). Private property subject to a restrictive use may be acquired or condemned by the Secretary or be traded for lands owned by the United States. 16 U.S.C. § 544g. If the Secretary chooses not to purchase or make a trade for the property, he may let it revert to a general use designation. 16 U.S.C. § 544f(o).

The Act provides an elaborate set of administrative and judicial remedies for parties adversely affected by a violation of the Act or by a final action or order of the Commission, the Secretary or the County. Until plaintiffs are denied the use of their property through the implementation of the Final Management Plan, they cannot be "adversely affected" persons or entities entitled to relief under § 544m(b)(2) or § 544m(b)(4).

This court must refrain from interfering with the establishment of the elaborate administrative scheme prior to its finalization. Denying plaintiffs judicial relief at this juncture will not subject them to any undue hardship; they can refile their claims upon final adoption and implementation of the land use ordinances in the relevant counties.

**IT IS ORDERED** that the defendants' motion to dismiss the action on ripeness grounds is **GRANTED.** The complaint and all claims contained therein are **DISMISSED.**

In light of the court's dismissal of the action for lack of subject matter jurisdiction, there is no need to address the issue of abstention.

**IT IS SO ORDERED.** The clerk is directed to enter this order and forward copies to counsel.