STATE OF CALIFORNIA, Pete Wilson, Governor; Joe G. Sandoval, Secretary, Youth and Adult Correctional Agency; James H. Gomez, Director, Department of Corrections; Francisco J. Alarcon, Chief Deputy Director, Department of the Youth Authority; Russell S. Gould, Director of Finance, State of California; Sandra Smoley, Secretary, Health and Welfare Agency, State of California; S. Kimberly Belshe, Director of Health Services, State of California, Plaintiffs–Appellants,

v.

UNITED STATES of America; Janet Reno, Attorney General; Doris Meissner, Commissioner, Immigration and Naturalization Service, United States; Alice Rivlin,* Acting Director, Director, U.S. Office of Management and Budget, United States, Defendants–Appellees.

No. 95–55490.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1996.

Filed Jan. 7, 1997.

---

* Substituted for Leon Panetta, Director of Office Management and Budget.

Floyd D. Shimomura, Assistant Attorney General, Linda A. Cabatic, Supervising Deputy Attorney General, Paul H. Dobson, Deputy Attorney General, Sacramento, California, for the plaintiffs-appellants.

Mark B. Stern, United States Department of Justice, Washington, D.C., for the defendants-appellees.

Louis F. Hubener, Assistant Attorney General, Office of the Attorney General, Tallahassee, Florida; Ian Fan, Deputy, San Diego, California; Daniel J. Popeo, David A. Price, Washington Legal Foundation, Washington, D.C., for the amici curiae.

Before REINHARDT and HALL, Circuit Judges, and MERHIGE, Senior District Judge.**

** The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

MERHIGE, Senior District Judge:

In this appeal, Plaintiffs–Appellants State of California[1] ("California") and state officials Governor Pete Wilson; Director of Finance, Russell S. Gould; Acting Secretary, Youth and Adult Correctional Agency, Joe G. Sandoval; Director of the Department of Corrections, James H. Gomez; Chief Deputy Director of the Department of the Youth Authority, Francisco J. Alarcon; Acting Secretary, Health and Welfare Agency, Sandra R. Smoley; and Director of the Department of Health Services, S. Kimberly Belshe (collectively, "California" or "the State") appeal from a judgment entered in the United States District Court for the Southern District of California granting the motion of the Defendants–Appellees United States of America and federal officials Attorney General Janet Reno ("Attorney General"); Acting Director of the Office of Management and Budget, Alice Rivlin; Commissioner, Immigration and Naturalization Service, Doris Meissner ("Commissioner of the INS"); Secretary of Health and Human Services, Donna E. Shalala; Administrator, Health Care Financing Administration, Bruce C. Vladek; and Secretary of Education, Richard W. Riley to dismiss California's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

In its Complaint, California asserts various constitutional and statutory claims premised on the impact of federal immigration policy on the State, particularly as it affects the State's fiscal burdens. California seeks monetary damages as well as injunctive and declaratory relief under the Administrative Procedure Act, 5 U.S.C. §§ 701–706. Jurisdiction has been asserted pursuant to 28 U.S.C. §§ 1331, 1346, 1361, 2201 and 2202 against the United States and a number of its officials acting in their official capacities. The matter in controversy allegedly arises under the Constitution and laws of the United States. This Court has jurisdiction as well under 28 U.S.C. § 1291. The immediate issue before the Court is the correctness of the trial court's dismissal of the Amended Complaint under Fed.R.Civ.P. 12(b)(6) for the failure to state a claim upon which relief can be granted. For the reasons stated below, the judgment of the district court is affirmed.

I.

This Court reviews de novo a grant of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Stone v. Travelers Corp., 58 F.3d 434, 436–37 (9th Cir.1995). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hughes v. Rowe, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (citation omitted). When reviewing a district court's dismissal of a complaint for failure to state a claim, this Court must accept the facts alleged in the complaint as true. Hartford Fire Ins. Co. v. California, 509 U.S. 764, 770, 113 S.Ct. 2891, 2895–96, 125 L.Ed.2d 612 (1993).

In its Complaint, California asserts that the number of permanent illegal residents in California stands at 1.7 million—5% of the

1. Both the State of California and the State of Arizona have sought redress from what each contends are violations of constitutional and statutory rights. The claims of each of these states were consolidated for argument. The Court heard the California action first, at counsels' request, followed immediately by argument from the State of Arizona. Although both Complaints contain similar prayers for relief, California's Complaint asserts additional claims than that of the State of Arizona. Accordingly, we resolve the California case in this opinion, and dispose of the Arizona case on the same grounds in an Order filed concurrently herewith.

2. A number of amici curiae have also filed briefs. Amongst these interested parties, all of whom support the Complaint filed by the Plaintiff–Appellants, are a number of United States and California legislators as well as The Washington Legal Foundation, The Allied Education Foundation and The California Correctional Peace Officers Association. The joint briefs of the aforementioned, for which the Court expresses its appreciation, have been considered in reaching the Court's conclusion.

It is also noted that the Amended Complaint added claims and two state public health officials as plaintiffs and the United States Secretary of Health and Human Services, the Administrator of the United States Health Care Financing Administration, and the United States Secretary of Education as defendants.

state's population—and increases by approximately 125,000 a year. California further asserts that, in the fiscal year this action was initiated, it would spend nearly $2.4 billion in providing federally mandated education and health care benefits to illegal aliens and in incarcerating illegal aliens who commit crimes within the State.[3]

California's Complaint consists of eight claims. In Count I of its Complaint, California asserts that the United States has violated its obligations to protect the State from invasion and to guarantee it a republican form of government under the Invasion and Guarantee Clauses of Article IV of the United States Constitution by failing to stop the intrusion of illegal aliens across the State's borders. U.S.Const. art. IV, § 4. In Counts II and IX, California asserts that the United States has violated the Guarantee Clause and the Tenth Amendment to the United States Constitution by requiring the State to fund emergency health care costs for illegal immigrants, by causing the State to incur the costs of incarcerating illegal immigrants, and by causing the State to incur the costs of providing public schooling to illegal immigrants. In Count III, California seeks a declaration that the Attorney General has violated 8 U.S.C. § 1365 because she has not decided to reimburse the State for the costs incurred in incarcerating illegal aliens out of monies available, but not specifically appropriated, for that purpose. Finally, in Counts V through VIII,[4] California seeks declaratory and injunctive relief because the Attorney General and the Commissioner of the INS failed to perform their statutory duties under 8 U.S.C. §§ 1252(I), 1252(a)(2), 1326 and 1252(c) by not conducting deportation proceedings immediately following the conviction of aliens eligible for deportation; failing to take into custody aliens convicted of aggravated felonies upon their release from state incarceration pending determination of deportability; failing to prosecute deported aliens who illegally reenter the country; and by failing to effectively execute final orders of deportation and instead merely "dropp[ing] off" the deported aliens at the U.S.–Mexican border.

## II.

### A. Invasion Clause

■ In Count I of its Complaint, California contends that the United States has violated its obligation under the Invasion Clause of Article IV, § 4 of the Constitution to protect the State from invasion.[5] California's claim under the Invasion Clause presents a nonjusticiable political question. In *Baker v. Carr*, the Supreme Court set forth the analysis that governs the political question doctrine. There, the Court stated:

It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962).

---

**3.** California contends that 5% of the State's population is made up of illegal immigrants, and estimates that it spends $395 million a year providing emergency health care for illegal aliens, another $390 million on incarceration and parole supervision of illegal aliens, as well as $1.5 billion educating illegal aliens.

**4.** California's Complaint does not contain a Count IV.

**5.** The Invasion Clause states: "The United States ... shall protect each of [the states] against Invasion." U.S.Const. art IV, § 4.

In this case, the issue of protection of the States from invasion implicates foreign policy concerns which have been constitutionally committed to the political branches. The Supreme Court has held that the political branches have plenary powers over immigration. *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1477–78, 52 L.Ed.2d 50 (1977). For this Court to determine that the United States has been "invaded" when the political branches have made no such determination would disregard the constitutional duties that are the specific responsibility of other branches of government, and would result in the Court making an ineffective non-judicial policy decision. *See Barber v. Hawaii,* 42 F.3d 1185, 1199 (9th Cir.1994) (dismissing an Invasion Clause claim as a nonjusticiable political question). Additionally, even if the issue were properly within the Court's constitutional responsibility, there are no manageable standards to ascertain whether or when an influx of illegal immigrants should be said to constitute an invasion. The Court notes that the other Circuits that have addressed the issues before us in similar suits against the United States have reached the same conclusions that we do. *Padavan v. United States,* 82 F.3d 23, 28 (2nd Cir.1996); *Chiles v. United States,* 69 F.3d 1094, 1097 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1674, 134 L.Ed.2d 777 (1996); *New Jersey v. United States,* 91 F.3d 463 (3rd Cir.1996); *Texas v. United States,* No. B–94–228 (S.D.Tex. Aug. 7, 1995), *appeal pending,* No. 95–40721 (5th Cir).

■ Moreover, California ignores the conclusion set forth by our Founders. In *The Federalist* No. 43, James Madison referred to the Invasion Clause as affording protection in situations wherein a state is exposed to armed hostility from another political entity. Madison stated that Article IV, § 4 serves to protect a state from "foreign hostility" and "ambitious or vindictive enterprises" on the part of other states or foreign nations.

*The Federalist* No. 43 at 293 (Cooke ed.1961).[6] It was not intended to be used as urged by California.

## B. Guarantee Clause

■ Counts I, II and IX of California's Complaint contend that federal immigration policy is violative of the Guarantee Clause of Article IV, § 4. The Guarantee Clause provides, "The United States shall guarantee to every State in this Union a Republican form of Government." U.S.Const. art. IV, § 4. California argues that federal immigration policy has forced it to spend money that it would otherwise not have been required to spend, thus depriving it of a republican form of government.

Supreme Court decisions have traditionally found that claims brought under the Guarantee Clause are nonjusticiable. *See New York v. United States,* 505 U.S. 144, 183–85, 112 S.Ct. 2408, 2432–33, 120 L.Ed.2d 120 (1992) (citing cases).[7] California's claims under the Guarantee Clause in Counts I, II, and IX raise nonjusticiable political questions. *See Padavan,* 82 F.3d at 28–29 (reaching the same result); *Chiles,* 69 F.3d at 1097 (reaching same result); *New Jersey,* 91 F.3d at 470.

Moreover, assuming, *arguendo,* that California has presented a justiciable claim, there is nothing in this record other than a mere bare contention that the federal government's policies deny California a republican form of government. The motion to dismiss was therefore properly granted.

## C. Tenth Amendment

California's Tenth Amendment claims in Counts II and IX focus on three areas where it is asserted that the State is unconstitutionally being required by the United States to spend funds or where it is asserted that the United States has "commandeered" the state

---

6. *See Debate From the Virginia Convention* (June 16, 1788), *reprinted in* 10 *The Documentary History of the Ratification of the Constitution* 1299, 1312 (Kaminsky & Saladins eds., 1993). *See also Padavan,* 82 F.3d at 28 (citing *The Federalist* No. 43).

7. As Justice O'Connor for an unanimous court in *New York v. United States* stated, in most cases in which the Court has been asked to apply the clause, the Court has found the claims to be nonjusticiable under the "political question" doctrine. *New York,* 505 U.S. at 184, 112 S.Ct. at 2432–33. (citations omitted).

legislative process.[8] In all three instances, California has failed to state a claim under the Tenth Amendment.

### 1. Medicaid

 California contends that the Federal Government's conditioning the receipt of Medicaid funds on the State's agreeing to provide emergency medical services to illegal aliens violates the Tenth Amendment. Under the Constitution, the Federal Government's conditioning of funds is permissible if (1) the spending, as in this case, is in furtherance of the general welfare; (2) Congress does so unambiguously to the end that states may knowingly exercise their choice to either accept or reject the funds; (3) the conditions imposed are reasonably related to the federal interest in the particular program; (4) no other constitutional provision "provide[s] an independent bar to the conditional grant of federal funds." *South Dakota v. Dole,* 483 U.S. 203 at 207–08, 107 S.Ct. 2793 at 2796–97, 97 L.Ed.2d 171 (1987). California does not contend that Congress violated any of the aforementioned conditions; instead it argues that while its choice to participate in Medicaid may have been voluntary,[9] it now has no choice but to remain in the program in order to prevent a collapse of its medical system. It contends as well that the determination of when the moment of coercion has been reached is one of fact which cannot be decided via a motion to dismiss. California attempts to support this contention by reference to *South Dakota v. Dole,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), where the Court wrote, "[o]ur decisions have recognized that in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'" *Id.* at 211, 107 S.Ct. at 2798 (citation omitted). The

*Dole* court concluded, however, that it would only find Congress' use of its spending power impermissibly coercive, if ever, in the most extraordinary circumstances. *Dole,* 483 U.S. at 210–11, 107 S.Ct. at 2797–98.

The response to that contention long preceded this case when this Court responded to similar contentions by the State of Nevada in reference to the federal government's conditioning the receipt of highway funds on the acceptance of the national speed limit. In that case, Nevada contended that the threatened loss of ninety-five percent of its highway funds deprived it of any realistic choice as to whether to reject the uniform national limit. *Nevada v. Skinner,* 884 F.2d 445 at 448–49 (9th Cir.1989). In refusing the relief sought, the Court noted that no party challenging the conditioning of federal funds has ever succeeded under the coercion theory. *Id.* at 448 (citing *Oklahoma v. Schweiker,* 655 F.2d 401, (D.C.Cir.1981)). This court went on to state:

> [C]an a sovereign state which is always free to increase its tax revenues ever be coerced by the withholding of federal funds-or is the state merely presented with hard political choices? The difficulty if not the impropriety of making judicial judgments regarding a state's financial capabilities renders the coercion theory highly suspect as a method for resolving disputes between federal and state governments.

*Id.* at 448 (footnotes omitted). The Court finds that to the extent that there is any viability left in the coercion theory, it is not reflected in the facts of this record. *See Padavan,* 82 F.3d at 28–29 (reaching same result); *New Jersey,* 91 F.3d at 466–67 (3d Cir.1996) (reaching same result).[10]

### 2. Prisons

 California also contends in Count IX that the United States has violated the Tenth

---

**8.** The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States are reserved to the States respectively, or to the people." U.S.Const. amend. X.

**9.** The Supreme Court has noted that participation in the Medicaid scheme is voluntary, *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 2513–14, 110 L.Ed.2d 455 (1990).

**10.** As to the argument that the issue was improperly decided at the motion to dismiss stage, the Eighth Circuit, in a decision affirmed by the Supreme Court, approved of the trial court's dismissal at this stage. *South Dakota v. Dole,* 791 F.2d 628, 634 (8th Cir.1986), *aff'd,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987).

Amendment because federal immigration policy causes the State to incur the costs of incarcerating those illegal aliens who commit crimes within the State. California reasons that because the United States has failed to effectively enforce its immigration policies, the Federal Government has essentially "commandeered" the State's legislative process by forcing California to allocate money and human resources to both incarcerate illegal alien felons and supervise their parole.

The Court concludes that California has failed to allege a Tenth Amendment violation because no federal mandate requires California to pursue a penal policy resulting in these costs. *See Padavan,* 82 F.3d at 28–29 (reaching same result); *New Jersey,* 91 F.3d at 467 (reaching same result).

### 3. Public Schools

■ Finally, California argues that the Federal Government has violated the Tenth Amendment because the State must allocate funds to pay for the public education of alien children. We note that this argument is merely a variation of California's claim that the Tenth Amendment is violated when it expends funds to incarcerate illegal aliens. Again, California contends that the costs of educating alien children stems from the Federal Government's ineffective policing of national borders. We find California's argument unpersuasive. Because the State's obligation to provide this education derives from an independent constitutional obligation and not federal immigration policy, *see Plyler v. Doe,* 457 U.S. 202, 230, 102 S.Ct. 2382, 2401–02, 72 L.Ed.2d 786 (1982), the Tenth Amendment is not implicated. *See Padavan* 82 F.3d at 29 (reaching same result); *New Jersey,* 91 F.3d at 467 (reaching same result).

### 4. Failure to State a Claim

■ In each instance discussed above, the trial court properly dismissed California's

claims because California failed to allege a viable Tenth Amendment violation. In addition to the foregoing, however, taking the facts in reference to immigration as accurate, as we must in considering a motion under Rule 12(b)(6), inevitably leads this Court to the conclusion that California's Tenth Amendment claims also present nonjusticiable political questions. The concerns expressed by California are unquestionably beyond the authority of the judicial branch.

### D. Statutory Claims

#### 1. Reimbursement for Costs of Incarceration

Under 8 U.S.C. § 1365, the Attorney General is authorized to reimburse states for the cost of incarcerating illegal aliens convicted of state crimes. Section 1365, however, does not appropriate any funds and is made "[s]ubject to the amounts provided in advance in appropriation Acts." 8 U.S.C. § 1365(a).[11]

■ In Count III, California seeks a declaration that the Attorney General has violated § 1365 because she has not decided to reimburse the State for the costs incurred in incarcerating illegal aliens out of monies available, but not specifically appropriated, for that purpose. While the record reflects that no "amounts have been provided in advance," California urges that 8 U.S.C. § 1365 authorizes the Attorney General to allocate generally appropriated INS funds to this specific purpose.[12]

■ Assuming, without deciding, that California has correctly interpreted § 1365, the Attorney General's decision to allocate monies generally appropriated to her in a lump-sum for the administration of immigration laws for the specific purpose of reimbursing a State for the costs of incarcerating illegal aliens under 8 U.S.C. § 1365 is "committed to agency discretion by law" and is

---

**11.** Title 8 U.S.C. § 1365(a) provides: "Subject to the amounts provided in advance in appropriation Acts, the Attorney General shall reimburse a State for the costs incurred by the State for the imprisonment of any illegal alien or Cuban national who is convicted of a felony by such State." 8 U.S.C. § 1365(a).

**12.** California notes that the Attorney General can draw upon a lump-sum appropriation of $1,048,-538,000 for INS salaries and expense as well as on increased fines and forfeitures authorized by 8 U.S.C. § 1330.

1094

not subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2). *Lincoln v. Vigil,* 508 U.S. 182, 192, 113 S.Ct. 2024, 2031, 124 L.Ed.2d 101 (1993)("The allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion."). Inasmuch as California may be seeking in Count III a further declaration that the Attorney General is authorized to allocate funds to the State to reimburse it for the costs of incarcerating illegal aliens, California seeks an unconstitutional advisory opinion. *See Native Village of Noatak v. Blatchford,* 38 F.3d 1505, 1509 (9th Cir.1994)("A federal court has no jurisdiction to hear a case that cannot affect the litigants' rights.").

## 2. Immigration Laws

■ California has also brought several other statutory claims alleging that the Attorney General has failed to adequately fulfill her obligation to enforce the country's immigration laws, in particular, 8 U.S.C. §§ 1252(I); 1252(a)(2)(A); 1326; and 1252(c). Title 8 U.S.C. § 1252(I) provides that "[i]n the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of conviction." 8 U.S.C. § 1252(I). In Count VI, California seeks a declaration and injunctive relief on the basis that the Attorney General and the Commissioner of the INS have violated § 1252(I) by adopting a policy of not commencing deportation proceedings until shortly before convicted illegal aliens are to be released from confinement.

Title 8 U.S.C. § 1252(a)(2)(A) provides that the Attorney General "shall take into custody any alien convicted of an aggravated felony upon release of the alien [from state custody or supervision]." 8 U.S.C. § 1252(a)(2)(A). In Count VI, California seeks a declaration and injunctive relief on the basis that the Attorney General and the Commissioner of the INS violated the terms of this section by failing to take into custody aliens convicted of aggravated felonies upon their release from

state incarceration pending determination of deportability.

Title 8 U.S.C. § 1326 provides that a person who enters the country illegally after being deported is guilty of a crime. In Count VII, California seeks equitable relief on the basis that the Attorney General has violated this section by prosecuting deported aliens who illegally reenter the country only in cases where the aliens are serious repeat offenders.

With respect to sections 1252(I), 1252(a)(2)(A) and 1326, the Court cannot, with propriety, address the issues raised. In *Heckler v. Chaney,* 470 U.S. 821, 838, 105 S.Ct. 1649, 1659, 84 L.Ed.2d 714 (1985) the Supreme Court held that "agency refusals to institute investigative or enforcement proceedings" fall within the "exception to reviewability provided by [5 U.S.C.] § 701(a)(2) for action 'committed to agency discretion.'" Each of the claims asserted by California under these statutes implicates the institution of enforcement actions of the variety contemplated in *Heckler.* As the Court noted in *Heckler,* "[a]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." 470 U.S. at 831, 105 S.Ct. at 1655. Accordingly, these issues, having been committed to agency discretion, are not subject to judicial review. While the Supreme Court in *Heckler* did state in a footnote that a non-enforcement decision might be reviewable where "the agency has consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities", *Heckler,* 470 U.S. at 833 n. 4, 105 S.Ct. at 1656 n. 4, the allegations asserted in the instant Complaint do not rise to a level that would indicate such an abdication.

■ Finally, California seeks declaratory and injunctive relief in Count VIII in the form of a declaration that the Attorney General and Commissioner of the INS have failed to effectively execute final orders of deportation pursuant to 8 U.S.C. § 1252(c). In particular, the State seeks a declaration that the Attorney General has a duty to adopt policies for the administration of

§ 1252(c) that are consistent with the ruling of this Court. The State seeks as well to enjoin the Attorney General from continuing to implement a policy that allows "drop off" border deportation for cost transfer and cost saving purposes.

Section 1252(c) provides that "the Attorney General shall have a period of six months" following a final order of deportation "to effect the alien's departure from the United States." 8 U.S.C. § 1252(c). The statute does not define "departure" or otherwise specify any method of effecting deportation.

Because the Attorney General and the Commissioner of the INS reasonably interpret the statute in determining that delivery of an alien to the border "effect[s] the alien's departure from the United States," the Court defers to that interpretation. *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). For the reasons previously stated concerning agency discretion and the Court's lack of authority to review agency actions as discussed in *Heckler,* California has failed to state a claim in Count VIII.

### III.

#### Sovereign Immunity

■ California contends that the trial court erred in dismissing Counts I, II, III and IX on the alternative grounds that suits against the United States are barred by sovereign immunity to the extent that monetary awards are sought. We agree that even if the State had asserted a justiciable claim seeking federal funds, such a claim would be barred by the doctrine of sovereign immunity in the absence of Congress having explicitly waived such immunity. *See Block v. North Dakota,* 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983) ("The States of the Union, like all other entities, are barred by federal sovereign immunity from suing the United States in the absence of an express waiver of this immunity by Congress.").

California contends that it seeks "reimbursement" and/or "restitution" as distinguished from "money damages." The State premises its argument on the waiver of sovereign immunity contained in 5 U.S.C. § 702 which states in pertinent part:

An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or officer or employee thereof acted or failed to act in an official capacity under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

While reliance on 5 U.S.C. § 702 is not well taken because the statute specifically exempts "money damages," regardless of its terminology, the "restitution" or "reimbursement" sought is monetary compensation for the monetary damage each state has suffered. The relief California seeks is therefore barred by the Constitution.

### IV.

The Court having concluded that all of the claims asserted by the State of California were properly dismissed, the judgment of the district court is **AFFIRMED**.