**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STATE OF OREGON,
         *Plaintiff-Appellant,*

    v.

LEGAL SERVICES CORPORATION,
         *Defendant-Appellee,*

UNITED STATES OF AMERICA,
         *Intervenor-Appellee.*

No. 06-36012

D.C. No.
CV-05-01443-
REJ/PP

OPINION

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, District Judge, Presiding

Argued and Submitted
October 23, 2008—Portland, Oregon

Filed January 8, 2009

Before: A. Wallace Tashima and Milan D. Smith, Jr.,
Circuit Judges, and George Wu,* District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable George Wu, United States District Judge for the Central District of California, sitting by designation.

115

## COUNSEL

Hardy Myers, Mary H. Williams, Stephen K. Bushong, and Jacqueline Sadker, Oregon Department of Justice, Salem, Oregon, for the plaintiff-appellant.

William S. Freeman, Cooley Godward Kronish LLP, Palo Alto, California; Alan Levine, Rachel B. Kane, and Allison Hersh, Cooley Godward Kronish LLP, New York, New York, for the defendant-appellee.

Peter D. Keisler, Karin J. Immergut, Barbara L. Herwig, and Matthew M. Collette, United States Department of Justice, Civil Division, Washington, D.C., for the intervenor-appellee.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Plaintiff-Appellant the State of Oregon (Oregon) appeals the district court's dismissal of its claims under Federal Rule of Civil Procedure 12(b)(6). Oregon brought suit against the Legal Services Corporation (LSC) for an alleged violation of its rights under the Tenth Amendment to the United States

Constitution. LSC has required the recipients of its funding to maintain legal, physical, and financial separation from organizations that engage in certain prohibited activities. Oregon alleges that this restriction has effectively thwarted its ability to regulate the practice of law in the State of Oregon and to provide legal services to its citizens. The district court dismissed the suit on the basis that Oregon's allegations of injury were not recoverable, and Oregon appealed. Because we conclude that Oregon lacks standing, we vacate the district court's dismissal of this action on the merits and remand with instructions that the action be dismissed for lack of subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Statutory Background: The Program Integrity Regulation

LSC is a private nonprofit corporation established by the United States for the purpose of providing financial support to individuals who would otherwise be unable to afford legal assistance. 42 U.S.C. § 2996b(a). To accomplish this purpose, LSC provides federal funds to local legal assistance programs throughout the United States. *Id.* § 2996e(a). *See generally* Legal Services Corporation Act of 1974 (LSC Act), Pub. L. No. 93-355, 88 Stat. 378 (1974) (codified as amended at 42 U.S.C. §§ 2996-2996*l*).

By regulation, LSC places certain restrictions on the use of its funds. *Id.* § 2996e(b)(1). These restrictions include, for example, a prohibition on the use of LSC funding for such activities as lobbying, participating in class action lawsuits, and advocating for the redistricting of political districts. 45 C.F.R. §§ 1612.3, 1617.3, 1632.3. Additionally, LSC requires its recipients to maintain "objective integrity and independence from any organization that engages in restricted activities." *Id.* § 1610.8(a).[1]  Requirements for this "objective

---

[1]This regulation was promulgated in response to a constitutional challenge to LSC restrictions on recipients using non-LSC funds for otherwise

integrity" are codified in what is now denominated the "program integrity" rule or regulation. The requirements include: (1) legal separation of the recipient from the unrestricted organizations; (2) no transfer of LSC funds between the recipient and the unrestricted organization; and (3) the recipient's physical and financial separation from the unrestricted organization.[2] *Id.*

Whether an LSC fund recipient is sufficiently physically and financially separated from non-compliant legal services providers is determined on a case-by-case basis, based upon the totality of the circumstances. *Id.* § 1610.8(a)(3). The program integrity regulation specifies that "mere bookkeeping separation of LSC funds from other funds is not sufficient." *Id.* Other factors, such as having separate personnel, separate accounting and timekeeping records, separate facilities, and distinguishing forms of identification are relevant but not all-

---

constitutional activities. Shortly after the restrictions were amended in 1996 to prohibit certain legal activities, a district court in Hawaii enjoined the LSC from enforcing them "to the extent that they relate to the use of Non-LSC Funds." *Legal Aid Soc'y of Haw. v. Legal Servs. Corp. (LASH)*, 961 F. Supp. 1402, 1422 (D. Haw. 1997). The district court found that the plaintiffs had a significant likelihood of success in arguing that the restrictions constituted unconstitutional conditions on the receipt of a federal subsidy. *Id.* at 1416-17.

The new rule, codified at § 1610.8, allows recipients to affiliate with organizations that use non-federal funds to engage in restricted activities, subject to preserving "objective integrity" between the two organizations. In so doing, it overcame the constitutional concerns raised in *LASH*. *See Legal Aid Soc'y of Haw. v. Legal Servs. Corp. (LASH II)*, 145 F.3d 1017, 1021-23 (9th Cir.), *cert. denied*, 525 U.S. 1015 (1998).

[2]These regulations were designed to mirror the program integrity rule promulgated pursuant to Title X of the Public Health Service Act, which withstood constitutional attack in *Rust v. Sullivan*, 500 U.S. 173 (1991). *See* 62 Fed. Reg. 27,695-97 (May 21, 1997). LSC's current regulations have also withstood constitutional challenges. *See LASH II*, 145 F.3d at 1031; *Velazquez v. Legal Servs. Corp. (Velazquez II)*, 164 F.3d 757, 773 (2d Cir. 1999).

encompassing. *Id.* Fund recipients must annually certify to the LSC that they comply with the program integrity regulation. *Id.* § 1610.8(b).

In this appeal, Oregon contends that the program integrity regulation violates its Tenth Amendment rights.

## II.   Factual and Procedural History: Conflict with Oregon's Guidelines

In April 2005, the Oregon State Bar amended its guidelines for Oregon's legal services program, directing service providers to integrate their operations and staff in places where separate organizations provide services to the same geographic area. While some of Oregon's service providers are LSC fund recipients, others are not and engage in restricted activities. Legal Aid Services of Oregon (LASO), a legal services provider, is a recipient of LSC funds, which account for approximately 45% of its $6.5 million annual budget. Oregon Law Center (OLC), another large legal services provider, is not an LSC fund recipient and engages in LSC-restricted activities.

In response to the State Bar's amended guidelines, LASO submitted a configuration proposal to LSC that would combine the LASO and OLC corporations into one non-profit corporation. Under the proposal, the newly constituted corporation would have two divisions, one of which would be subject to the LSC restrictions and the other of which would not. The two divisions would also maintain separate financial books and records, and would notify the public of their distinct functions in letterheads, business cards, and signage. However, the two divisions of the proposed new entity would share personnel and equipment, and would operate in the same physical premises. LSC's Office of Legal Affairs reviewed the proposal and concluded that it would not comply with LSC's requirements for program integrity.

In September 2005, LASO and OLC filed a complaint against LSC in district court, alleging that the LSC restrictions

violated their First Amendment rights. On the same day and in the same court, Oregon filed this action against LSC alleging that the program integrity regulation effectively thwarted Oregon's policies governing its legal services program, in violation of the Tenth Amendment. Oregon sought to enjoin LSC from enforcing the program integrity regulation in Oregon. The two suits were consolidated and assigned to a magistrate judge.

The magistrate judge recommended that the district court grant LSC's motion to dismiss as to all of LASO's claims except its as-applied challenge to the program integrity rule. The magistrate judge also recommended granting LSC's motion to dismiss Oregon's complaint, because the state itself was not regulated by the LSC and because Oregon's claims of coercion did not meet the high standard required under Ninth Circuit precedents. *See California v. United States*, 104 F.3d 1086 (9th Cir. 1997); *Nevada v. Skinner*, 884 F.2d 445 (9th Cir. 1989).

The district court adopted the magistrate judge's recommendations and re-severed the lawsuits. Oregon appealed its claims to this court.

## JURISDICTION

The jurisdiction of the federal courts is limited to "cases" and "controversies." U.S. CONST., Art. III, sec. 2. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." FED. R. CIV. P. 12(h)(3). An objection that a federal court lacks subject matter jurisdiction may be raised at any time, even after trial and the entry of judgment. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). The objection, made under Federal Rule of Civil Procedure 12(b)(1), may be raised by a party or by the court on its own initiative.[3] *Id.* While we have jurisdiction over this appeal

---

[3]Neither the district court nor the parties alluded to any possible jurisdictional problem with Oregon's prosecution of this action. We therefore

under 28 U.S.C. § 1291, we found reason to question whether the district court had subject matter jurisdiction over this case. As analyzed in this opinion, we conclude that Oregon lacks standing to bring a claim under the Tenth Amendment or the Spending Clause because it has not alleged a sufficiently concrete and particularized injury. We therefore vacate the district court's judgment and remand for an entry of dismissal for lack of subject matter jurisdiction.

## DISCUSSION

### I.   Standing Requirements

**[1]** A plaintiff must demonstrate standing "for each claim he seeks to press" and for " 'each form of relief sought.' " *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 185 (2000)); *see also Allen v. Wright*, 468 U.S. 737, 752 (1984) ("the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted"). The plaintiff bears the burden of proof to establish standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). When, as here, the plaintiff defends against a motion to dismiss at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," because we " 'presume that general allegations embrace those specific facts that are necessary to support the claim.' " *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

The "irreducible constitutional minimum" requirements for standing were described in *Lujan* as follows:

asked, at oral argument, for supplemental briefing on Oregon's standing to pursue this action.

First, the plaintiff must have suffered an "injury in fact" — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " *Whitmore* [*v. Arkansas*, 495 U.S. 149, 155 (1990)] (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 38, 43.

504 U.S. at 560-61 (footnote and some internal citations omitted). Before applying these requirements to the facts of this case, however, we must first consider what impact, if any, Oregon's status as a state as opposed to a private party has on the standing inquiry.

## A.    State Standing: Quasi-Sovereign Interests

The Supreme Court has recognized that "States are not normal litigants for the purposes of invoking federal jurisdiction," and have interests and capabilities beyond those of an individual by virtue of their sovereignty. *Massachusetts v. EPA*, 549 U.S. 497, 127 S. Ct. 1438, 1454 (2007). The Court in *Massachusetts* focused principally on the state's sovereign interest in its territory and its ability to preserve clean air for its citizens. *Id.* The Court has elsewhere characterized a state's unique prerogatives as a *parens patriae* action stemming from "a 'quasi-sovereign' interest" defined rather vaguely as "a set of interests that the State has in the well-being of its populace." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601-02 (1982).

However, the Supreme Court has also recognized that "the concept [of special State standing due to the quasi-sovereign interest] risks being too vague to survive the standing requirements . . . . [Therefore, a] quasi-sovereign interest must be sufficiently concrete to create an actual controversy between the State and the defendant." *Id.* at 602. Furthermore, "[i]nterests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement. In such situations, the State is no more than a nominal party." *Id.* If a State is only a nominal party "without a real interest of its own — then it will not have standing under the *parens patriae* doctrine." *Id.* at 600.

**[2]** Generally, a state has been granted standing under the *parens patriae* doctrine in situations involving the abatement of public nuisances, such as global warming, flooding, or noxious gases. *See Massachusetts*, 549 U.S. 497 (Massachusetts had standing to sue the EPA for failing to issue rules regarding the emission of greenhouse gases); *North Dakota v. Minnesota*, 263 U.S. 365 (1923) (North Dakota had standing to sue Minnesota for allegedly creating conditions leading to flooding of farmland); *Georgia v. Tenn. Copper Co.*, 206 U.S. 230 (1907) (Georgia had standing to sue for an injunction to prevent the defendant copper companies from discharging noxious gases over Georgia's territory). In other cases, states have been granted standing to represent the economic interests of their residents. *See Snapp*, 458 U.S. 592 (Puerto Rico had standing to sue defendant apple farmers for subjecting its workers to conditions more burdensome than those established for temporary foreign workers in violation of the Wagner-Peyser Act); *Georgia v. Pa. R. Co.*, 324 U.S. 439 (1945) (Georgia had standing to bring suit against railroads for conspiracy to fix freight rates in a manner that discriminated against Georgia shippers in violation of federal antitrust law); *Pennsylvania v. West Virginia*, 262 U.S. 553 (1923) (Pennsylvania had standing to sue for an injunction preventing West Virginia from giving other states a preferential right

of purchase and curtailing the supply of gas carried to Pennsylvania).

**[3]** As the Supreme Court noted in *Snapp*, the common thread among these cases is each state's quasi-sovereign interest in the health and well-being of its residents and a quasi-sovereign interest in "not being discriminatorily denied its rightful status within the federal system." 458 U.S. at 607. In contrast, the Court has expressly found that a state does not have standing "to protect her citizens from the operation of federal statutes." *Massachusetts*, 127 S. Ct. at 1455 n.17 (referencing *Massachusetts v. Mellon*, 262 U.S. 447 (1923) (Massachusetts lacked standing to enjoin a Congressional act authorizing appropriations on a voluntary basis)).

### B.    Prudential Principles: No Reliance on the Claims of Third Parties

**[4]** In recognizing that a state may have standing by virtue of its quasi-sovereign interest in its citizens, the Supreme Court has been careful to note that a state's interest must be in some way distinguishable from that of its citizens: "In order to maintain such an action, the State must articulate an interest apart from the interests of particular private parties." *Snapp*, 458 U.S. at 607. The doctrine that a plaintiff must have an independent means of standing is one of a set of "prudential principles" adopted by the Supreme Court to augment the requirements of Article III. These "judicially self-imposed limits on the exercise of federal jurisdiction" function to further limit the role of the courts, but they can be modified or abrogated by Congress. *Allen*, 468 U.S. at 751; *see also Warth v. Seldin*, 422 U.S. 490, 500-01 (1975) (noting that without the prudential requirements, "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions," and that "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules").

**[5]** In addition to the requirement that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties," the Supreme Court has disapproved of considering " 'abstract questions of wide public significance' " amounting to " 'generalized grievances.' " *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) (quoting *Warth*, 422 U.S. at 499-500).

## II.  Oregon's Alleged Injury

**[6]** Oregon alleges that LSC's restrictions "effectively infringe on Oregon's sovereignty in violation of the Tenth Amendment and principles of federalism established in the structure of the United States Constitution, and exceed federal authority under the Spending Clause." Although we do not address the merits of Oregon's claim for the purpose of determining standing, *Lujan*, 504 U.S. at 561, we do analyze the characterization of the injury itself to determine whether or not it is "concrete and particularized," "actual or imminent," and "fairly traceable to the challenged action of the defendant." *Id.* at 560 (citations omitted). Oregon need only allege general factual allegations of injury resulting from LSC's conduct to resist a motion to dismiss for lack of standing. *Id.* at 561. Because Oregon's factual allegations do not rise to the level of a concrete, particularized, actual or imminent injury against the state itself, that is independent from alleged harm to private parties, we hold that the action must be dismissed for lack of subject matter jurisdiction.

Oregon alleges that LSC's restrictions fall outside Congress's spending authority. In addition, Oregon alleges that LSC uses its restrictions to coerce LASO into complying with federal regulations over state regulations because LASO cannot survive as an organization without federal funding.

**[7]** Oregon further alleges that LSC's restrictions limit Oregon's ability to regulate LASO and its other legal services

providers. Oregon cannot require LASO to combine its facilities with OLS because that would make LASO ineligible for federal funding, and would lead to LASO's dissolution. Oregon paints this situation as a restriction on its ability to make policy, and alleges that such a restriction violates the Tenth Amendment.

[8] However, Oregon acknowledges that it is not regulated by LSC, and that it is completely free to make or change its policy in the face of LSC regulations. Oregon does not receive LSC funding, and so is unaffected by its existence or non-existence aside from the fact that parties within Oregon are recipients. Oregon would be in the same position it now occupies if the federal government, for whatever reason, decided to cease further LSC funding. Therefore, Oregon's only alleged injury is on behalf of its legal services providers. As pleaded, Oregon's injury is indistinguishable from LASO's.

## A.   Oregon Has No Independent Injury

### 1.   *Tenth Amendment Coercion Claim*

[9] Although Oregon claims an injury under the Tenth Amendment separate from LASO's, it has not alleged general facts sufficient to establish such a claim. The Tenth Amendment reserves any power not expressly delegated to the federal government to the States. Only states have standing to pursue claims alleging violations of the Tenth Amendment by the federal government. *Tenn. Elec. Power Co. v. Tenn. Valley Auth.*, 306 U.S. 118, 144 (1939); *see also Brooklyn Legal Servs. Corp. B v. Legal Servs. Corp.*, 462 F.3d 219, 234 (2d Cir. 2006). However, to bring a claim under the Tenth Amendment, a state must first allege facts relating to a relevant injury. In this case, we hold there is no such injury.

The Supreme Court made a similar ruling in *Mellon*, a case in which Massachusetts sought to enjoin Congress from

enacting the Maternity Act, Cong. Ch. 135, 67th Cong., 42 Stat. 224 (1921). The Maternity Act provided for an initial appropriation, followed by annual appropriations for a period of five years, to be apportioned among the states that elected to accept the funds and comply with the attached provisions. *Id.* § 2. The purpose of the act was "promoting the welfare and hygiene of maternity and infancy." *Id.* § 1. Massachusetts alleged that "the act is a usurpation of power not granted to Congress by the Constitution — an attempted exercise of the power of local self-government reserved to the States by the Tenth Amendment." *Mellon*, 262 U.S. at 479.

The Court found that Massachusetts, which had not accepted the funds or the conditions, had no standing to allege an injury under the Tenth Amendment. The Court reasoned:

> What, then, is the nature of the right of the State here asserted and how is it affected by this statute? Reduced to its simplest terms, it is alleged that the statute constitutes an attempt to legislate outside the powers granted to Congress by the Constitution and within the field of local powers exclusively reserved to the States. . . . But what burden is imposed upon the States, unequally or otherwise? Certainly there is none, unless it be the burden of taxation, and that falls upon their inhabitants, who are within the taxing power of Congress as well as that of the States where they reside. Nor does the statute require the States to do or to yield anything. If Congress enacted it with the ulterior purpose of tempting them to yield, that purpose may be effectively frustrated by the simple expedient of not yielding.

*Id.* at 482.

**[10]** Similarly, in this case there is no burden or injury placed on Oregon. Like Massachusetts in *Mellon*, Oregon has not accepted federal funds, nor is it bound by the accompany-

ing restrictions. Oregon is not injured by the federal government's decision to subsidize certain private activities, even if the government attaches impermissible conditions, as is alleged, to the recipients of those funds. Oregon is only affected by virtue of its interest in the effect of the grant and the conditions on its citizens; it has no independent claim of injury.

Oregon cannot claim injury simply on the basis that federal subsidies to private parties do not compliment Oregon's policies. The state has no standing to sue the federal government to provide voluntary federal subsidies to private parties, and certainly has no standing to sue the federal government to change its conditions for those federal subsidies. This is true even assuming, as we must, at the pleading stage of the litigation, that the federal government has gone beyond its authority under the Spending Clause to regulate private parties who accept its funds.

**[11]** Such a ruling does not conflict with the Supreme Court's language in *Dole*, which allows for the possibility of a Tenth Amendment claim in cases where "the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.' " 483 U.S. at 211 (quoting *Davis*, 301 U.S. at 590). In that case, as in all other cases where the doctrine of coercion has been addressed, the state was the direct subject of both federal grants and federal restrictions. *See, e.g., Printz v. United States*, 521 U.S. 898 (1997); *New York v. United States*, 505 U.S. 144 (1992); *Gregory v. Ashcroft*, 501 U.S. 452 (1991); *California*, 104 F.3d 1086; *Nevada*, 884 F.2d 445. In this case, Oregon is not a recipient of funds, nor does it have authority to accept or refuse funds on behalf of its legal services providers, which are all private parties. Consequently, it cannot claim to be the subject of coercion in violation of the Tenth Amendment.

### 2. *"Interference" Claim*

**[12]** Oregon argues in the alternative that it has been injured by LSC's regulations, which thwart Oregon's efforts at policy making with regards to Oregon's Legal Service Program. Oregon attempts to analogize its situation to cases recognizing a state's standing to defend its statutes when they are alleged to be unconstitutional or pre-empted by federal regulation. *See, e.g., Maine v. Taylor*, 477 U.S. 131, 137 (1986); *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008). However, those cases are distinguishable, because in this case there is no dispute over Oregon's ability to regulate its legal services program, and no claim that Oregon's laws have been invalidated as a result of the LSC restrictions.

**[13]** The core of the dispute is whether Oregon should have the ability to control the conditions surrounding a voluntary grant of federal funds to specifically delineated private institutions. Because Oregon has no right, express or reserved, to do so, there is no judicially cognizable injury. Oregon may continue to regulate its legal service programs as it desires, but it cannot depend on voluntary financial support from LSC to LASO or any other legal services provider within the state if it makes choices that conflict with the LSC program integrity regulations.

### B. Oregon Lacks Standing Under The Parens Patriae Doctrine

As detailed above, Oregon's only allegations of injury are generalized grievances about the probable consequences to legal services providers within Oregon as a result of conflicting state and federal policy goals. Oregon does not have standing to bring suit on behalf of these private parties, nor has Oregon proven it has standing under the *parens patriae* doctrine, because it has shown no independent quasi-sovereign interest.

Oregon claims a quasi-sovereign interest in regulating access to its civil justice system, alleging that this interest has been threatened by the LSC regulations. Looking beyond the fact that such an interest has never before been recognized, this court cannot accept such a claim as "an interest apart from the interests of particular private parties." *Snapp*, 458 U.S. at 607. The state's interest in the "health and well-being — both physical and economic — of its residents in general" is not at issue here, nor does Oregon allege that it is being "discriminatorily denied its rightful status within the federal system." *Id.* Moreover, we can see no effective way federal courts could ever limit *parens patriae* standing were a state allowed to bring suit on behalf of its citizens solely by virtue of its interest that its citizens benefit from voluntary federal grants. Allowing such cases would make the *parens patriae* doctrine "too vague to survive the standing requirements of Art. III." *Id.* at 602.

We likewise reject Oregon's attempt to link itself to *Bowen v. Public Agencies Opposed to Social Security Entrapment* by using the argument that, like the State in *Bowen*, Oregon's sovereignty has been diminished as a result of federal action. In *Bowen*, unlike here, the State was a party to a contract with Congress and Congress acted to breach the contract, resulting in actual injury. 477 U.S. 41, 50 (1986). There was therefore no question of standing, as is raised here.

## CONCLUSION

**[14]** Oregon has failed to allege generalized facts sufficient to show an actual injury for the purposes of establishing its standing in this case. Oregon is not directly affected by the allegedly unconstitutional LSC regulations, and is free to avoid any or all indirect effects of those regulations by simply increasing its own taxes to fund its desired policies. Oregon has also failed to show a sufficient basis for bringing suit on behalf of its citizens. Oregon has not shown a cognizable interest apart from the interests of LSC recipients who are

also citizens of Oregon, and is, therefore, without standing to pursue its claims in this action. Accordingly, we VACATE the district court's dismissal of this action on the merits and REMAND with instructions that the action be dismissed for lack of subject matter jurisdiction. Each party shall bear its own costs.

**VACATED and REMANDED, with instructions.**