U S WEST COMMUNICATIONS,
INC. Plaintiff,

v.

MFS INTELENET, INC., and Roger Hamilton, Chairman, Ron Eachus, Commissioner, and Joan H. Smith, Commissioner, in their official capacities as Commissioners of the Oregon Public Utility Commission; and Oregon Public Utility Commission, Defendants.

No. CIV. 97–857–JE.

United States District Court,
D. Oregon.

Jan. 30, 1998.

---

1222

Hirt, U.S. Dept. of Justice Civil Div., Washington, DC, Jonathan T. Foot, U.S. Dept. of Justice, Civil Div., Fed. Programs Branch, Washington, DC, for U.S.A., Federal Communications Com'n, intervenor.

## OPINION AND ORDER

JELDERKS, United State Magistrate Judge.

Plaintiff U S West Communications, Inc. (U.S. WEST) brings this action against defendants MFS Intelenet, Inc. (MFS), the Oregon Public Utility Commission (PUC), and PUC Commissioners Roger Hamilton, Ron Eachus, and Joan Smith (the Commissioners). The Commission defendants move to dismiss based upon lack of subject matter jurisdiction, and MFS moves to dismiss for failure to state claims upon which relief may be granted. The United States of America and the Federal Communications Commission (FCC) move to intervene. I grant the FCC's motion to intervene, deny the Commissioner's motion to dismiss, and grant in part and deny in part MFS's motion to dismiss.

### *BACKGROUND*

1) *Telecommunications Act of 1996*

U S West has provided local telephone and exchange access service to Oregon customers for more than one hundred years. Through most of this time, U S West has had no competition in its service territories.

In February 1996, Congress enacted the Telecommunications Act of 1996 (1996 Act), Pub.L. No. 104–104, 110 Stat. 56; 47 U.S.C. § 153 *et seq.* The act, which amends the Telecommunications Act of 1934, is designed to promote competition in local and long distance telephone markets. The Act sets out a comprehensive scheme for removing barriers to entry into these markets, and reflects a Congressional intent to promote the rapid development of competition by encouraging new entrants to build their own local telephone networks. *See* 47 U.S.C. §§ 251–253.

The Act provides for the entry of competitors through two distinct mechanisms.

Lawrence H. Reichman, Chin See Ming, Perkins Coie, Portland, OR, Sherilyn C. Peterson, Kirstin S. Dodge, Perkins Coie, Bellevue, WA, Norton Cutler, Denver, Co, for U S West Communications, Inc.

Alexia Morrison, Morton J. Posner, Swidler & Berlin, Washington, D.C., Sara Siegler Miller, Portland, for Defendant MFS Intelenet, Inc.

W. Benny Won, Timothy M. Wood, Dept. of Justice General Counsel, Salem, OR, Joseph T. McNaught, Hardy Myers, Assist, Atty. General, Dept. of Justice, Salem, OR, for Roger Hamilton, Ron Eachus, Joan H. Smith, Oregon Public Com'n.

Herbert C. Sundby, Kristine Olson, U.S. Attorney's Office, Portland, OR, Theodore C.

Under the first of these, competitors can purchase individual, "unbundled" network elements that can be combined with their own network facilities to provide services. "Loops" are an example of such unbundled elements. These are the wires and other equipment needed to connect individual telephone customers to a provider's central offices, its trunk lines, communications databases, and support systems. The second mechanism allows new competitors to purchase, at wholesale prices, an incumbent local exchange carrier's (LEC's) assembled finished services, such as residential or business telephone service, for resale. These two mechanisms allow new competitors to begin competing with existing LECs before their new completed, competing networks are in place.

The Act sets out obligations for various kinds of telecommunications service providers. Under Section 25 of the Act, incumbent LECs such as U S West are required to:

(1) negotiate in good faith to reach Agreements with new competitors under the Act;

(2) offer interconnection to competing providers at "any technically feasible point" within their network. This interconnection must be at least equal in quality to that provided by the LEC to itself, and must be provided on rates and terms that are "just, reasonable, and nondiscriminatory;"

(3) provide access to unbundled network elements at "any technically feasible point" on rates and terms that are "just, reasonable, and nondiscriminatory." "Network elements" are facilities or equipment used to provide telecommunications services. "Unbundling" refers to selling individual network elements, as opposed to aggregations of network elements;

(4) offer at wholesale rates any telecommunications service that the LEC provides at retail prices to customers who are not telecommunications carriers;

(5) provide notice of changes in the information necessary for the transmission and routing of services on the LEC's network; and

(6) provide for "collocation" of the equipment necessary for interconnection or

access to unbundled elements on rates and terms that are "just, reasonable, and nondiscriminatory." "Physical collocation" requires an incumbent LEC to provide the office space that its competitors need to install and operate their own equipment. "Virtual collocation" requires an incumbent LEC to dedicate to its competitors the equipment they request and to permit the competitors to interconnect with the equipment in the LEC's offices.

Under the Act, incumbent LECs are entitled to recover the costs of providing interconnection, unbundled network elements, transportation and termination of traffic, resale and collocation, and may also recover a reasonable profit. 47 U.S.C. § 252(d)(1).

Section 252 of the Act sets out a comprehensive framework for reaching Agreements between LECs and competitors. If these parties are unable to reach an Agreement resolving all of the issues covered by the Act, a party can seek mediation under § 252(a)(2). If that mediation does not produce an Agreement, a party may seek compulsory arbitration under § 252(b). State Commissions like defendant PUC are responsible for conducting arbitration, subject to certain limitations. A Commission may reject an Agreement, or a portion of an Agreement, that has been reached through arbitration if it finds that the agreement does not comply with the requirements of § 251 and any FCC regulations in effect under that section, or with the standards set out in § 252(d).

The Act provides for federal district court review of interconnection agreements concluded pursuant to § 252. Section 252(e)(6) provides that, if a state commission "makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the Agreement...meets the requirements of the Act."

The Act also allows states to decline to carry out the regulatory roles set out above. Section 252(e)(5) provides that

If a State commission fails to act to carry out its responsibility under this section in any proceeding or other matter under this section, then the Commission

[FCC] shall issue an order preempting the State Commission's jurisdiction of that proceeding or matter within 90 days after being notified (or taking notice) of such failure, and shall assume the responsibility of the State commission under this Section with respect to the proceeding or matter and act for the state commission

47 U.S.C. § 252(e)(5). If a state does not act, FCC proceedings and any judicial review of the FCC's action provide the exclusive remedies. 47 U.S.C. § 252(e)(6). The Act precludes state court review of interconnection agreements arbitrated under the Act. 47 U.S.C. § 252(e)(4).

Section 252(e)(3) provides that

"nothing in this section shall prohibit a State commission from establishing or enforcing other requirements of State law in its review of an [interconnection] Agreement, including requiring compliance with intrastate telecommunications service quality standards or requirements."

### 2) *Arbitration Giving Rise to this Action*

MFS requested interconnection and related network elements from U S West shortly after the Act was passed. U S West and MFS were unable to resolve all of the issues related to that request, and MFS filed a petition with the PUC for arbitration pursuant to § 252(b). Arbitration was conducted in late September 1996, and the parties filed final briefs on October 8, 1996.

In a decision issued on November 8, 1996, the arbitrator resolved certain issues, and required the parties to submit a contract in accordance with the decision. U S West filed its Exceptions to the arbitrator's decision, objecting to the provisions complained of in the present action, on November 18, 1996. MFS filed its comments on the Arbitrator's decision and requested the Commissioners' approval of the arbitration order on November 21, 1996. The Commissioners and the PUC approved and adopted the arbitration order on December 9, 1996.

U S West petitioned for reconsideration of the Commission decision approving the arbitration decision on February 6, 1997.

The Commissioners and the PUC denied that petition in an Order dated April 7, 1997.

At the time that the complaint in this action was filed, MFS had yet to comply with the arbitrator's order requiring it to submit an executed contract to U S West "incorporating terms that reflect the Commission's final decision" in the underlying proceedings. In their opening memorandum in support of their motion to dismiss, the PUC and Commissioners contended that the absence of an approved interconnection agreement deprived this court of subject matter jurisdiction. However, on August 25, 1997, U S West executed an interconnection agreement that MFS had tendered on August 21, 1997. The PUC approved the interconnection agreement before the PUC and the Commissioners filed their reply brief in support of the motion to dismiss, and withdrew their contention that the action was not ripe for review in that reply memorandum.

### 3) *Claims and Relief Sought* [1]

U S West's first claim for relief alleges that the Agreement imposes below-cost pricing in violation of 47 U.S.C. §§ 251(c) and 252(d). In this claim, U S West challenges the price assigned for unbundled network elements, the price allotted for physical collocation, the wholesale discount rates and application of that discount to already discounted, volume, wholesale rates, and the pricing applicable to "traffic originated or terminated by enhanced service providers," such as Internet traffic.

U S West's second claim alleges that the "sham unbundling" provision in the Agreement violates 47 U.S.C. §§ 251(c), 252(d), and 271(e)(1) by requiring it to provide "reaggregated unbundled elements far below cost...."

U S West's third claim alleges that the Commission defendants exceeded their delegated authority by requiring it to offer deregulated services that are not subject to the Act, and by requiring it to provide discounted services for resale to enhanced service providers.

---

1. This summation of the claims reflects U S West's agreement to dismiss counts 1(D), (E), and (G), and count III(B).

U S West's fourth claim alleges that the Agreement violates 47 U.S.C. §§ 251(b)(2) and 251(e)(2) by preventing it from recovering a significant portion of the costs of interim number portability, and by requiring it to subsidize MFS in the manner in which the parties share switched access charges.

U S West's fifth claim alleges that the Agreement violates the Fourteenth Amendment to the United States Constitution by depriving it of property without due process of law.

U S West's sixth claim alleges that the Agreement violates the Fifth and Fourteenth Amendments to the United States Constitution by taking private property for a public use without just compensation.

U S West asks this court to enter an order declaring that the various provisions of the Agreement challenged in its claims violate the Act. It further seeks a declaration that it is not required to interconnect with MFS until it is "fully compensated for the costs of interconnecting." U S West seeks an order enjoining performance of the Agreement in its entirety and remanding the dispute to the PUC. In the alternative, if the court finds that the Agreement complies with the Act, U S West seeks a declaration that the PUC Orders it challenges and the Agreement violate the Fifth and Fourteenth Amendments to the United States Constitution.

4) *Motions Before the Court*

The United States and the FCC move to intervene, and have filed a memorandum in opposition to the Commissioners' and the PUC's motion to dismiss. The PUC and the Commissioners move to dismiss on the grounds that this court lacks subject matter jurisdiction because this action cannot be brought against them in federal court. MFS moves to dismiss on the grounds that the complaint does not state claims upon which relief may be granted. It also contends that the court lacks jurisdiction over certain claims.

### STANDARDS

1) *Failure to State a Claim*

 In evaluating a motion to dismiss for failure to state a claim pursuant to Fed.

R.Civ.P. 12(b)(6), the court must accept the allegations of material fact as true, and must construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). A claim should be dismissed only if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted. *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1292 (1997) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

2) *Jurisdiction*

 Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of actions over which the district court lacks subject matter jurisdiction. The party attempting to invoke the court's jurisdiction has the burden of establishing that the court has subject matter jurisdiction.

### DISCUSSION

1) *Motion to Intervene by FCC and United States*

The United States and the FCC contend that they are entitled to intervene under Fed.R.Civ.P. 24(a), 28 U.S.C. § 2403, and 28 U.S.C. § 517. Alternatively, they assert that leave to intervene should be granted under Rule 24(b). Rule 24(a) provides that intervention shall be permitted when a United States statute confers a right of intervention, or when the party seeking to intervene claims an interest "relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by an existing party." In actions in which "the constitutionality of any Act of congress affecting the public interest is drawn in question," 28 U.S.C. § 2403(a) requires federal courts to allow the United States to intervene "for argument on the question of constitutionality." Under 28 U.S.C. § 517,

[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district

in the United States to attend to the interests of the United States in a suit pending in a court of the United States...or to attend to any other interest of the United States.

Rule 24(b)(2) provides that intervention may be permitted "when an applicant's claim or defense and the main action have a question of law or fact in common."

■ In the present action, the Commission defendants have challenged the constitutionality of the judicial review provided for under the Act. The United States and the FCC have an obvious interest in the interpretation and enforcement of the Act, and have timely sought to intervene in this action. The interests of these intervenors are not necessarily the same as those of any other parties, and it appears that none of the original parties will necessarily represent their interests adequately. I therefore grant the motion to intervene.

2) *PUC's and Commissioners' Motion to Dismiss for Lack of Subject Matter Jurisdiction*

The PUC and the Commissioners contend that this court lacks subject matter jurisdiction for several reasons. I will address these issues in the order presented in these parties' opening memorandum.

a) *Contention that the action is barred by the Eleventh Amendment*

i) *Action against PUC*

■ The Commission defendants contend that the Eleventh Amendment to the United States Constitution bars the prosecution of this action against them in federal court. That amendment provides that

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

State immunity under the Eleventh Amendment extends to state agencies such as the PUC, and to state officials such as the defendant commissioners who act on the state's behalf and who can assert a state's sovereign immunity. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–46, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

■ Though the Eleventh Amendment generally bars federal jurisdiction over actions brought against states, a state may waive that immunity by a statutory or constitutional provision. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 n. 1, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Participation in a federal program may also constitute a waiver of Eleventh Amendment immunity. *Premo v. Martin*, 119 F.3d 764, 770–71 (9th Cir.1997).

As noted above, the Act allows state commissions such as the PUC to participate in the arbitration of interconnection agreements, or to decline participation. If a state commission does not conduct arbitrations and assume other responsibilities under Section 252 of the Act, the FCC preempts the state commission's jurisdiction. If a state commission chooses to exercise its regulatory authority, the Act clearly provides for judicial review of the relevant interconnection agreements resulting from the process.

■ Though Congress cannot compel states to participate in federal programs or require states to govern according to Congressional instructions, it can encourage states to regulate in a particular manner by offering states the choice of regulating according to federal standards or having state law preempted by federal regulation. *New York v. United States*, 505 U.S. 144, 162, 167, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). The United States Supreme Court has concluded that a state's waiver of Eleventh Amendment immunity may be evidenced " 'by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 305, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)).

■ U S West, the United States, and the FCC contend that, by voluntarily participating in the regulatory process, Oregon has waived its immunity from the jurisdiction of this district court. Like several other federal district courts that have recently ad-

dressed this issue, I agree. *See U S West Communications, Inc. v. Thoms,* No. 4:97–CV–70082 (S.D.Iowa, Aug. 4, 1997); *U S West Communications, Inc. v. Reinbold,* No. A1–97–25 (D.N.D. July 28, 1997); *U S West Communications, Inc. v. TCG Seattle,* 971 F.Supp. 1365, 1997 WL 426278 (W.D.Wash. 1997); *GTE South, Inc. v. Morrison,* No. 3:97CV493, slip op. (E.D.Va. Nov. 7, 1997). The clear implication to be drawn from the statutory scheme at issue here is that Congress conditioned state participation in the negotiation, arbitration, and approval process on consent to federal judicial review of the resulting agreements. States are not required to participate, but if they choose to, the Act makes clear that their regulatory decisions will ultimately be subject to review by federal courts. In the absence of any other reasonable construction of the statute, I can only conclude that, acting through the Commission defendants, Oregon waived the immunity from federal jurisdiction otherwise provided by the Eleventh Amendment.

ii) *Action against individual commissioners*

Even if I concluded that Oregon had not otherwise waived its Eleventh Amendment immunity, based on my understanding of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), I would deny the motion to dismiss as to the individual defendant commissioners. In *Young,* the United States Supreme Court held that, though the Eleventh Amendment barred actions in federal courts against the states themselves, it did not bar such actions seeking injunctive relief against state officers who are alleged to have acted in violation of rights secured under the United States Constitution. This principle applies to federal statutes as well as to the federal Constitution, *see, e.g., Natural Resources Defense Council v. California Dep't of Transp.,* 96 F.3d 420, 422 (9th Cir.1996), and is based on the premise that federal court authority to enjoin "continuing violation of federal law [is] necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). Under this principle, federal courts "may enjoin state officials to conform their future conduct to the require-

ments of federal law...." *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

The Commission defendants contend that the *Young* doctrine does not apply to the present action because the PUC has been named as a defendant, because the individual commissioners are not authorized to act individually, because the relief sought is not strictly limited to "prospective injunctive relief," and because the action does not raise issues that are "reasonably free from doubt." I have reviewed these arguments and the responses of U S West and the intervenors carefully. I will not set out my analysis of those arguments here, but simply note that I find them unpersuasive. First, U S West brings this action against the PUC on the grounds that the State has waived its Eleventh Amendment immunity, not on the basis of the *Young* doctrine which applies to the individual commissioners. Second, that the individual commissioners cannot act individually does not make an action against them an action against the state that is beyond the scope of the *Young* doctrine; numerous courts have permitted actions against individual officials to go forward under that doctrine even though an action could not be brought directly against the state agency by whom the officials were employed. *See, e.g., Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Capitol Industries–EMI, Inc. v. Bennett,* 681 F.2d 1107, 1120 (9th Cir.), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655 (1982); *W. Birkenfeld Trust v. Bailey,* 827 F.Supp. 651, 657 (E.D.Wash.1993). Third, that U S West seeks review of the PUC's "past actions" does not render this an action seeking more than prospective relief. In actions to which the *Young* doctrine applies, plaintiffs typically seek injunctive relief against application of decisions that state officials have already made. Finally, though the *Young* Court did state that the doctrine set out in that action should apply where the issue is "reasonably free from doubt," neither that decision or the many subsequent decisions applying the doctrine held that federal jurisdiction is appropriate only when it is reasonably certain that the plaintiff will prevail.

■ I conclude that the *Young* doctrine does not bar the prosecution of the present action against the individual commissioners. U S West alleges that the commissioners have violated federal law in the manner in which they have set the rates and terms of the telephone service interconnection, seek only prospective relief, and do not seek monetary relief from the State of Oregon through the PUC or the individual commissioners. The action appears to be clearly within the scope of the *Young* doctrine.

b) *Contention that the action is barred by the Johnson Act, 28 U.S.C. § 1342*

The Commission defendants contend that the Johnson Act, 28 U.S.C. § 1342, renders U S West's "42 U.S.C. § 1983 and constitutional claims" outside the scope of this court's jurisdiction. That Act provides that

The district court shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and

(3) The order has been made after reasonable notice and hearing; and

(4) A plain, speedy, and efficient remedy may be had in the courts of such State.

■ The Johnson Act precludes federal jurisdiction only when all of the conditions set out in 28 U.S.C. § 1342 are satisfied. *Hawaiian Tel. Co. v. Public Util. Comm'n,* 827 F.2d 1264, 1273 (9th Cir.1987), *cert. denied,* 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 906 (1988).

■ Here, U S West's action is neither based exclusively on diversity jurisdiction or alleged "repugnance" to the Federal Constitution, nor are all of the other conditions required for application of the Johnson Act met. For example, U S West is not seeking to enjoin or restrain the operation of any PUC rate order, but instead challenges the terms and conditions of a private interconnection agreement approved pursuant to a federal Act. Even if the conditions were oth-

erwise satisfied, I would conclude that the Johnson Act is inapplicable here because the Telecommunications Act, which provides a specific statutory statement of jurisdiction, is not displaced by the general terms of the earlier Johnson Act. *See Brown v. General Serv. Admin.,* 425 U.S. 820, 834, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

c) *Contention that the Act violates Tenth Amendment and Guarantee Clause*

The Commission defendants contend that this action is barred by the 10th Amendment and the Guarantee Clause, Article IV, § 4 of the United States Constitution. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The Guarantee Clause provides that "[t]he United States shall guarantee to every State in this Union a Republican Form of Government. . ."

The Commission defendants argue that these provisions are violated by Section 252(e)(6) of the Act, which provides for federal court review of state commission determinations concerning interconnection agreements, and Section 252(e)(4) of the Act, which prohibits state court review of these determinations. They assert that, in enacting the Telecommunications Act of 1996, Congress did not have the authority to "compel" states to choose between exercising their rights under the Tenth Amendment to regulate intrastate telecommunications matters (and risking loss of their Eleventh Amendment Immunity) or retaining their Eleventh Amendment immunity and abandoning their "sovereign rights to regulate intrastate telecommunications matters to the FCC by operation of 47 U.S.C. § 252(e)(5)." The Commission defendants contend that the Act unlawfully compels states to administer a federal regulatory program, and argue that the Act's prohibition on state court review of PUC determinations concerning interconnections is inconsistent with the division between state and federal authority set out in the Constitution. They also assert that, because Congress has no authority to abrogate state sovereign authority under the Com-

merce Clause of Article I, it lacked the lawful authority to "make the waiver of state sovereign immunity a condition to the state's action. . . ."

█ Based upon my review of the relevant cases cited by the parties, I conclude that the statutory scheme at issue here does not violate the Tenth Amendment, the Guarantee Clause, or the dual sovereignty of federal and state government established by the Constitution. Before turning to the Tenth Amendment issue, I note that the Commission defendants do not identify how the Act purports to deny states the republican form of government specified under the Guarantee Clause. Claims brought under that clause are generally considered nonjusticiable. *State of California v. United States,* 104 F.3d 1086, 1091 (9th Cir.1997). Even assuming that the issue is justiciable here, the United States Supreme Court has noted that, if the legislation in question offers states a legitimate choice rather than subjects states to an "unavoidable command," states are able to set their own legislative agendas and state officials remain accountable to a local electorate. *New York,* 505 U.S. at 185–186, 112 S.Ct. 2408.

█ Under the Commerce Clause, Congress has the authority to regulate activity that, though "purely intrastate in character. . .combined with like conduct by others similarly situated, affects commerce among the states. . . ." *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 276, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (quoting *Fry v. United States,* 421 U.S. 542, 547, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975)). The Tenth Amendment prohibits Congress from requiring states to administer federal programs against their will. *Printz v. United States,* 521 U.S. 98, 117 S.Ct. 2365, 2383, 138 L.Ed.2d 914 (1997); *New York,* 505 U.S. at 178, 112 S.Ct. 2408. However, when Congress has the authority to regulate private activity pursuant to the Commerce Clause, the Tenth Amendment does not prohibit it from offering states the choice of either regulating that activity according to the standards it establishes "or having state law preempted by federal legislation." *New York,* 505 U.S. at 167, 112 S.Ct. 2408. Though Congress may not compel a state to enact any particular legislation, it may induce a

state to participate in a regulatory scheme by conditioning the state's receipt of federal funds on taking prescribed action. *Id.*

In *New York,* the Court considered a challenge to three provisions of the federal Low–Level Radioactive Waste Policy Amendments Act of 1985, which offered states incentives to address waste disposal issues. The Court found that two of the provisions, which left the states free to choose whether or not to participate, were constitutional. *New York,* 505 U.S. at 173–174, 112 S.Ct. 2408. It held that a third provision requiring states to either regulate in conformance with federal regulation or to assume title to and liability for radioactive waste generated within their borders constituted an unlawful coercion. *Id.* at 175, 112 S.Ct. 2408.

In *Printz,* the Court struck a section of the Brady Handgun Violence Prevention Act requiring local officials to conduct background checks before allowing the purchase of handguns. *Printz,* 117 S.Ct. at 2383.

In *Hodel,* the Court considered a challenge to legislation that offered states the opportunity to develop a regulatory program consistent with federal standards, and provided for federal regulation if a state chose not to participate. *Hodel,* 452 U.S. at 288–89, 101 S.Ct. 2352. Though it noted that the legislation limited the states' legislative choices concerning important issues, the Court concluded that the statute was not constitutionally infirm. *Id.* at 290, 101 S.Ct. 2352.

In *FERC v. Mississippi,* 456 U.S. 742, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982), the Court rejected a challenge to federal legislation requiring state PUCs to consider certain federal standards concerning energy rates and regulation, but not requiring the states to adopt or enforce federal standards. The Court found that this legislation did not violate the Tenth Amendment. *Id.* at 764, 102 S.Ct. 2126.

█ In the present action, the Commission defendants challenge federal legislation that allows states to choose whether or not to participate in the federal regulatory scheme. Under the guidance of the above decisions, I conclude that this legislation does not violate the Tenth Amendment. It appears that Con-

gress can confer the authority to review these complex agreements upon federal courts without offending the Constitutional or statutory provisions upon which the Commission defendants rely. I therefore deny the motion to dismiss for lack of subject matter jurisdiction.

d) *Contention that U S West seeks relief that is beyond the scope of judicial review authorized under the Act*

The Act provides that an aggrieved party may bring an action in federal court "to determine whether the Agreement...meets the requirements" of Sections 251 and 252. 47 U.S.C. § 252(e)(6). The Commission defendants contend that the court lacks jurisdiction to provide these remedies because U S West "seeks, among other things, declaratory and injunctive relief under statutes besides 47 U.S.C. § 252(e)(6)."

At this stage in the proceedings, it is not necessary to determine what particular remedies might be available if U S West ultimately establishes that the Agreement in question does not comply with the requirements of the Act. Regardless of what other remedies U S West is seeking, it clearly seeks review of the Agreement as provided under the Act. This court has subject matter jurisdiction, and the Commission defendants' motion to dismiss should be denied.

3) *MFS' Motion to Dismiss*

a) *Motion to dismiss 1st claim*

U S West's first claim challenges the price assigned for unbundled network elements in the Agreement, as well as the price set for physical collocation, wholesale discount rates and their application, and pricing applicable to "enhanced service providers."

(1) *Unbundled loop price*

MFS contends that U S West is collaterally estopped from challenging the unbundled loop rate set by the PUC because U S West stipulated to the cost methodology at issue in another proceeding before the PUC. In the alternative, MFS contends that the claim "constitutes an impermissible collateral attack on that other PUC order."

■ For the purposes of analyzing this motion, it is sufficient to note that U S West

has alleged that the prices in question do not allow it to recover its costs, and that this requirement that it provide services below cost constitutes a violation of the Act. These allegations are sufficient to state a claim. As to the contention that U S West is collaterally estopped because it stipulated to a particular cost methodology, I simply note that one can stipulate to a methodology without stipulating to the correctness of calculations purportedly made pursuant to that methodology. I also note my doubts as to whether the state agency findings which MFS cites are "entitled to preclusive effect" as MFS argues, given that the Act specifically provides for judicial review. I deny the motion to dismiss this portion of U S West's first claim.

(2) *Collocation*

■ The Act provides that an LEC like U S West must recover just and reasonable compensation if it is forced to "collocate" by providing competitors like MFS space to install and operate their own equipment. U S West has alleged that the PUC set physical collocation rates that do not allow it to recover its costs. These allegations state a claim, regardless of any opportunity U S West may have had to "be heard" concerning these rates in other proceedings before the PUC. I deny the motion to dismiss this part of U S West's first claim.

(3) *Wholesale discounts*

Under the Act, U S West is required to "offer for resale at wholesale rates any telecommunications service that the carrier provides at retail to subscribers who are not telecommunications carriers." 47 U.S.C. § 251(c)(4). The Act further provides that state commissions like the PUC "shall determine wholesale rates on the basis of retail rates charged...excluding the portion thereof attributable to any marketing, billing, collection, and other costs that will be avoided by the local exchange carrier." 47 U.S.C. § 252(d)(3). U S West alleges that the wholesale discount set out in the Agreement is not based on the costs it will avoid, and that MFS failed to present necessary evidence in support of the discount rate that it proposed.

MFS contends that these allegations fail·to state a claim because U S West failed to submit evidence that would allow the arbitrator to determine its avoided costs. It also asserts that this court cannot provide a remedy for this aspect of the first claim because U S West's real complaint is not with the Agreement, but with the Act's requirement that "resold services be priced taking the retail rate structure as a starting-point."

■ Accepting U S West's allegations as true as I must in evaluating this motion, I am satisfied that this claim should not be dismissed. Examination of the evidence submitted in the proceedings below, and analysis of whether the arbitrator applied the correct standards, are well beyond the scope of the present proceedings. U S West's allegations concerning the wholesale discount state a claim, and I deny the motion to dismiss this portion of the first claim.

### (4) *Enhanced service providers*

The Agreement provides that U S West and MFS will compensate each other on a reciprocal basis for terminating local calls originating from each other's network. U S West alleges that the Agreement fails to adequately compensate it for transporting and terminating "enhanced services," such as Internet traffic, for MFS. U S West contends that it is unfair to provide the same compensation for this traffic as for other calls because "holding times" for Internet connections are generally much longer than for non-Internet traffic.

MFS contends that U S West cannot obtain review of this issue now because it did not raise this argument during arbitration, and because the FCC has subsequently concluded that inclusion of enhanced service provider traffic does not violate the Act. U S West contends that it did object to the inclusion of enhanced service provider traffic in the reciprocal compensation provisions of the Agreement, noting that MFS itself cited in its memorandum U S West's statement of its position in the parties' Joint Position Statement submitted in the arbitration proceedings. In that document, U S West opined that it was "appropriate to exempt traffic originated to and terminated by enhanced service providers from the reciprocal compensation arrangement of this Agreement"

until the FCC had reformed the access ·charge system.

■ Under these circumstances, I am satisfied that this aspect of U S West's first claim should not be dismissed. Though it may not have argued that the provision in question violated a particular section of the Act, U S West objected to inclusion of enhanced service provider traffic in the reciprocal compensation provisions in the underlying proceedings. It is also not clear that the FCC Order MFS cites specifically addresses this issue.

### b) *Motion to dismiss second claim*

U S West's second claim alleges that a "sham unbundling" provision in the Agreement allows MFS to purchase the separate network elements needed to form a network at a price that is lower than the wholesale rate for the same services purchased as a unit. U S West alleges that the Agreement allows MFS to purchase "unbundled" elements at cost and then "pretend" to recombine the elements into a "finished service."

MFS contends that the Eighth Circuit rejected U S West's "sham unbundling" theory in *Iowa Utilities Board v. Federal Communications Comm'n*, 120 F.3d 753 (8th Cir. 1997). In that decision, the court concluded that the Act permitted competing carriers to obtain the ability to provide "finished telecommunications services" entirely through access to unbundled elements of an incumbent LEC's network. *Id.* at 815.

U S West does not dispute that the Eighth Circuit held that a requesting carrier may gain access to all of the unbundled elements needed to provide a finished service. It argues, however, that it is complaining of something else—of provisions in the Agreement allowing MFS to require U S West to both "disaggregate" its network elements, and then to "reaggregate" these elements into a finished service for MFS. U S West cites the Eighth Circuit's conclusion that the Act does not require incumbent LECs to actually *combine* the unbundled elements, but instead provides that "the requesting carriers will combine the unbundled elements themselves...." *Id.* at 813.

■ In its reply memorandum, MFS contends that the Agreement does not require U S West to perform the recombination of which it now purportedly complains. At this stage in the proceedings, I have not attempted to fully comprehend the various provisions of the Agreement, and to understand the ramifications of each particular portion to the agreement as a whole. I do note that the parties' joint proposal, which MFS cites, states that U S West will not restrict MFS "from combining elements with any technically compatible equipment" that MFS owns. Though the proposal also recites the parties' agreement that U S West will perform "the functions necessary to combine requested elements in any technically feasible manner," it is not clear whether this agreement would require U S West to perform the total "reaggregation" of unbundled elements of which it now complains. Accepting U S West's allegations as true, and construing those allegations in its favor as I must, I cannot now conclude that U S West cannot any set of facts entitling it to relief on this claim. I therefore deny the motion to dismiss this claim.

### c) *Motion to dismiss third claim*

U S West's third claim alleges that the Commission defendants exceeded their delegated authority by requiring it to offer deregulated services that are not subject to the Act, expand by requiring it to provide discounted services for resale to enhanced service providers.[2]

#### (1) *Requirement that U S West make deregulated services available*

U S West contends that the Act did not delegate to the Commission defendants the authority to require it to offer for resale any services other than those included in *retail tariffs* already in existence. U S West argues the PUC could not require it to make its *deregulated* services available to MFS,

and that Oregon has not granted the PUC authority over such services.

■ These contentions appear to conflict with the plain language of the Act. Section 251(c)(4)(A) provides that LECs like U S West must "offer for resale at wholesale rates any telecommunications service that the carrier provides at retail to subscribers who are not telecommunications carriers." Telecommunications services can be sold at retail without a tariff, and, as MFS notes, some states do not require tariffs for telecommunications services. The Act defines these services as including "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used." These provisions neither state, nor appear to imply, any exception as to deregulated services. I therefore grant the motion to dismiss this portion of U S West's action.

#### (2) *Requirement that U S West provide discounted services for resale to enhanced service providers*

■ U S West contends that the Commission defendants lacked the authority under the Act to provide discounted services for resale to "enhanced service providers" such as Internet service providers, because Internet traffic is not a "telecommunications service." Because I find no basis for concluding that the local call portion of Internet traffic does not qualify as "a telecommunications service," I disagree, and grant the motion to dismiss this part of U S West's third claim as well.[3]

### d) *Motion to dismiss fourth claim*

This claim alleges that the Agreement violates the Act by preventing U S West from recovering much of the costs of interim number portability, and by requiring it to subsidize MFS in the division of switched access

---

**2.** As noted above, U S West has agreed to dismiss its allegation that the Commission defendants exceeded their authority by requiring it to apply wholesale discounts to nonrecurring charges for unbundled network elements.

**3.** The FCC has concluded that Internet access consists of both the local connection of Internet

service providers through public switched telecommunications networks, and the unregulated service provided by the Internet service providers themselves. *See Report and Order, In the Matter of Federal–State Joint Board on Universal Service,* CC Docket No. 96–45, 1997 WL 236368, § 83, 788–89 (F.C.C. May 8, 1997).

charges. MFS contends that these allegations do not state a claim upon which relief may be granted because the methods of cost recovery were approved in an FCC Order addressing number portability that is subject to review only by the United States Courts of Appeals. U S West contends that the FCC Order in question has been challenged, and that, in any event, the Commission defendants did not fully comply with the Order in setting out the provisions related to the cost recovery portion of this claim. U S West contends that the Order did not dictate the distribution of access charges that is addressed in the second part of the fourth claim.

 I am satisfied that the fourth claim should not be dismissed at this point. U S West has alleged that the provisions complained of violate the Act, and it is not readily apparent that these provisions were required by or fully comport with a binding FCC Order. The viability of this claim requires a scrutiny of the underlying record that is simply inapplicable at this stage in the proceedings.

e) *Motion to dismiss fifth claim*

U S West's fifth claim alleges that the Agreement unlawfully deprived it of property without due process of law. This claim alleges that the Commission defendants "improperly adopted or relied on the FCC Order and the rules promulgated therein, failed to take into account the overriding provisions of the Act, and acted arbitrarily." The claim further alleges that the Commission defendants lacked the authority to impose provisions that were not supported by the record, and that they "unlawfully adopted the Agreement with provisions that are inconsistent with the record evidence."

 In addition to requiring that one whose property might be taken be provided notice and an opportunity to be heard, due process requires that the decision be made by a reasonable decision maker who does not act arbitrarily or capriciously, and that the decision be based upon the evidence presented. *See, e.g., Jordan v. City of Lake Oswego,* 734 F.2d 1374, 1376 (9th Cir.1984). U S West's allegations that the Commission defendants arbitrarily deprived it of property

without the support of evidence in the record states a due process violation claim. Accepting these allegations as I must in analyzing a motion to dismiss for failure to state a claim, I therefore deny the motion to dismiss this claim.

f) *Motion to dismiss sixth claim*

U S West's sixth claim alleges that the Agreement violates the Fifth and Fourteenth Amendments to the United States Constitution by taking private property for a public use without just compensation. MFS contends that this claim must fail because an unlawful taking occurs only if the "total effect" of the rates in question is confiscatory. *See Duquesne Light Co. v. Barasch,* 488 U.S. 299, 312, 109 S.Ct. 609, 102 L.Ed.2d 646 (1989). MFS asserts that U S West has not alleged that the Agreement will impair its financial integrity, but has only alleged that "discrete policies of the OPUC will lead to service-or element-specific losses...."

 This argument is not persuasive. *Duquesne Light* and related decisions requiring reference to the "total effect" of rates imposed in the context of regulated monopolies, in which losses in one area might be offset by altering the rates in another. Here, as U S West correctly notes, the Act itself specifically provides that costs for interconnection and network elements must be determined "without reference to a rate-of-return or other rate-based proceedings." 47 U.S.C. § 252(d)(1)(A)(i).

 MFS also contends that this claim is not ripe for review because the rates at issue are "merely interim rates." I disagree. In determining whether a particular agency decision is "ripe" for review, courts generally consider whether the challenged action constitutes a "final agency action," whether the issues presented are of a legal or factual nature, whether the challenged action has or will directly and immediately affect the party seeking review, and whether resolution of the issue will foster effective administration. *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Here, U S West has alleged facts that satisfy this test. U S West has alleged that it has executed a final binding

agreement setting out the terms of interconnection with MFS based upon the PUC orders at issue, and that it is required under these orders to provide certain services and facilities at prices that will not allow it to recover its costs. U S West contends that the Commission defendants have heard the issues and arguments the parties have raised regarding the arbitrator's decision, have resolved those issues in a manner that is to U S West's detriment, and "will not revisit these issues...." I am satisfied that, though identified as "interim," the rates at issue here are sufficiently fixed and find them to warrant judicial review. I therefore deny the motion to dismiss this claim.

## CONCLUSION

The motion to intervene brought by the United States and the FCC (# 28) is GRANTED. The motion to dismiss brought by the Oregon PUC and the Commissioners (# 10) is DENIED. MFS's motion to dismiss (# 12) is GRANTED as to claims 1(D), (E), and (G), and as to claim III, and DENIED as to the balance of U S West's claims.